(84 Misc. Rep. 565)

## In re KERNOCHAN.

(Supreme Court, New York County, Special Term. March 28, 1914.)

1. INSANE PERSONS (§ 64*)—ALLOWANCE FROM ESTATE TO RELATIVE—NECESSARY SHOWING.

Before an allowance may be granted from an incompetent's estate to one to whom the incompetent owes no duty of support, as a nephew of full age and under no disability, having a mother and another aunt, competent and no less well circumstanced, it must be shown, beyond a reasonable doubt, that the incompetent, if sane, would assume the duty; and it must be shown there is a real need or necessity of applicant to be provided for; and this though incompetent is incurable, advanced in years, has a large surplus income, and her presumptive heirs and next of kin are applicant's mother and aunt.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 107; Dec. Dig. § 64.*]

2. INSANE PERSONS (§ 64*)—APPLICATION FOR ALLOWANCE FROM ESTATE—FEES OF ATTORNEYS.

The fees of an attorney for an unsuccessful competent applicant of independent means for an allowance from an incompetent's estate will not be allowed from the estate, but those of the counsel for the incompetent's committee will be so allowed.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 107; Dec. Dig. § 64.*]

Application of Marshall R. Kernochan for an allowance from the estate of Marie Marshall, an incompetent. Denied.

Nash & Jones, of New York City, for petitioner.

Henry F. Miller, of New York City, for committee of the estate of the incompetent.

COHOLAN, J. Application of Marshall R. Kernochan for an order directing the committee of the estate of Marie Marshall to pay him out of the incompetent's income the sum of $12,000 per annum. The questions raised by the petition were referred by an order entered herein on the 26th day of August, 1913, to a referee to take proof of the facts and to report with his opinion in regard to the propriety of granting such an allowance. The referee's report was filed on the 4th day of February, 1914. He found that the facts set forth in the petition were true, and he was of opinion that the young man, for a period of five years, was entitled out of this incompetent's estate to an annual allowance of $9,000. The referee was not appointed to hear and determine; his duty was to take proof of the facts, and with his opinion to make his report.

The recommendation of the referee in no sense meets the approval of the court. The application is unusual and extraordinary, and the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

testimony elicited in support of the petition discloses a peculiar state of facts. It shows a young man, 33 years of age, who has lived an idle and luxurious life, now attempting, on the plea that he desires to further a taste for music, to increase his income by obtaining an allowance out of his aunt's estate of the sum of $12,000 per year. The petitioner, an only son, was born into and is now surrounded by large wealth. His mother's estate was summarized as of January 1, 1913, in the sum of $1,154,534.22; her gross annual income in 1913 was $39,660.17. In her city home 12 servants are employed, and in her country home at Pittsfield, Mass., there are 25. Martha M. Wysong, another of his aunts and a widow 67 years of age, is without issue and is possessed of an estate of $2,525,000, which produced an annual gross income of $81,000. Upon attaining his majority the petitioner received from the estate of his father about $101,000. A portion of this money was lost in speculation, but a gift of $50,000 from his mother so made up the loss that his estate at the present time is practically intact. He resides with his mother, contributes nothing to the household expenses, and derives from his own property an income of about $3,750 per year. The petitioner in 1900 took up musical composition, and has made extensive studies in New York and Germany. His average income from this source has not exceeded $30 per year, although his expenses for advertising his songs and his one cantata amount to $175 per year. He belongs to twelve clubs, as follows: The Union, Brook, Racquet, Knickerbocker, Grolier, Players, Tuxedo, Lenox, Pittsfield Country Club, Stockbridge, the Tennis Club, and the Automobile Club. He has an automobile and pays his chauffeur $100 per month. He has followed no occupation other than his diversion for music. In brief, this healthy and athletic young man, from an environment of luxury, wealth, and position, declares that since neither his mother nor his aunt, Mrs. Wysong, will give him an allowance, this court should decree him one from the estate of his incompetent aunt—a woman who become insane eight years prior to his birth and whom he never saw but once, and that time some eight years ago. He seeks to persuade the court to this conclusion by the statement that if this allowance is not granted he will be relegated to this position: (1) He will be compelled to resign from all his clubs except the Union and Knickerbocker; (2) he will be restricted in the entertainment of his friends; (3) his forms of recreation will not be as expensive as they are at the present time; and (4) he will be compelled to abandon his automobile. Another reason assigned for an allowance is that with it there will be a reasonable prospect of his marriage. His testimony on this point is of interest:

"Q. Mr. Kernochan, is it your wish and desire to marry? A. It certainly is. Q. And is it the wish of your mother that you should marry? A. Yes; very much so. Q. And has your mother said to you that in view of her financial situation she could not give you any adequate allowance to enable you to marry? A. Yes. Q. And you feel that you are not able to marry with your present income? A. I do; it is impossible. Q. Does the fact that your income is so small prevent you at the present time from making an offer of marriage? A. Yes, it does. Q. And if the allowance asked for should be granted to you would you make an offer of marriage with the fair hope of receiving an acceptance? A. I should think I might. Q. Well, you would

make the offer? A. I probably should. Q. And if you do not receive the allowance will your mode of life continue as it has been in past? A. No, I will have to change it very radically."

[1, 2] The power of the court to make direction, under proper circumstances, in respect of the disposition of the incompetent's estate is conceded. Sections 2320–2322, Code Civ. Pro. The court, however, must preserve the incompetent's property from waste or destruction, and the jurisdiction of the court must be exercised by means of a committee of the person or a committee of the property of the incompetent. In the last analysis and in its essence the court's power is one founded in its sound discretion, and its exercise is guided and controlled by the welfare of the incompetent. It is scarcely conceivable that the incompetent herein will ever be restored to sound mind. However, if she ever does reason, it is possible that, situated as she is, surrounded by every comfort, her physical health might enable her to outlive both her sisters and her nephew, the petitioner. Upon her death thereafter without a will and a resident of Virginia, her property would pass to relatives who are not parties to this proceeding; that there are such relatives is shown by the testimony of Frederick C. Kernochan, one of the committee. The incompetent is under no duty to support the petitioner. If the application had been presented by the son or wife of an incompetent or an indigent person, who stood in such relationship to the incompetent that the incompetent would be under an obligation to support the petitioner, the duty and the power of the court, limited only by the amount involved, would be obvious. Ex parte Whitbread, 2 Meriv. 99. However, this condition does not here exist. The petitioner is the nephew of the incompetent. He is of full age, of ripe experience, sound mind, and under no disability. His mother is living, and he has another aunt who is perfectly competent and no less well circumstanced. There is nothing in the relationship of the petitioner to the incompetent which would cast upon her the duty or the obligation of supporting him. There is no duty on the incompetent to maintain the petitioner in his "social position" or to enable him to reach a "station in life." In this country, with its free institutions, rank and position are not recognized. Gould v. Gould, 61 Misc. Rep. 120, 114 N. Y. Supp. 331; Matter of Brown, 80 Misc. Rep. 4, 141 N. Y. Supp. 193.

It is to the credit of the committee that they have opposed this application, and there is no lack of authority to sustain their position The law may be briefly stated. Before an allowance may be granted from an incompetent's estate to one to whom the incompetent owes no duty of support, it must be established that the incompetent if sane would make the allowance. The proof required is that the incompetent should have known the applicant and should have indicated while sane by acts or words that he or she had such an intention to support the applicant; or that such facts and circumstances be made to appear as would show beyond a reasonable doubt that the incompetent, if sane, would assume such a burden. The courts are required to scrutinize the evidence submitted upon such an application with caution, recognizing that such applications should be narrowed and

discouraged rather than extended or encouraged. There must exist a real need or a necessity upon the part of the applicant to be provided for, the court being mindful that it does nothing wantonly or unnecessarily; and, finally, it is not the duty of the court to deal benevolently or charitably with the property of the incompetent. In re Evans, Law Reports, Chan. Div., vol. 21, p. 297; In re Darling, Law Reports, Chan. Div., vol. 39, p. 208; Matter of Heeney, 2 Barb. Ch. 326; Matter of Willoughby, 11 Paige, 257; Shelford on Lunacy, 156, 160.

It has been urged that the allowance should be granted so as to stimulate the petitioner to achieve greatness and success as a musician, and that if the incompetent were sane she would be so disposed to aid him in his ambition. The referee in this respect has been led to make this observation: The petitioner "should be encouraged to work and to attain to a proficiency entitling him to a place in the ranks of musicians, and that if Marie Marshall could know of the work he had done that she would willingly grant him such help as would enable him to live properly in his environment and move up in his profession." If the petitioner has musical talent—and the returns do not require this conclusion—his mother and his competent aunt, who have his welfare at heart and must know of his talent and desire, are immediate and proper persons to whom he can appeal for largess and sympathy. I do not deem the increase of musical renown as being the substantial object of the application. At most, it is a mere pretext to the exclusion of the real reason, which is that this young man may have additional means to maintain or to accentuate the luxurious living to which he considers that he is entitled and which has ever been his environment. The referee apparently has so found. Yet his conclusion does not justify the finding. He says:

"The application in this case is urged upon several grounds which, in my opinion, are without weight and weaken rather than strengthen the claim. These are that the petitioner has been brought up under a liberal and handsome expenditure of money in the method of life of his family; that he has been brought up to belong to many clubs and to give entertainments and to maintain what is called a 'station in life.' These are all sufficient to deny the application in my opinion, and whether he becomes the ultimate heir of a large fortune or not, he is in no need of the money of this incompetent to prepare himself for a life of intelligent comprehension of the duties of an American citizen and the preparation for the care of that estate, should it come to him, by entertaining or joining clubs or trying to reach some so-called 'station.'"

I am in accord with this well-expressed statement, but disagree and fail to understand the conclusion reached from it. The recommendation of the referee appears to be "a mere impulse of benevolence." It matters not that the incompetent is incurable, 65 years of age, without issue, never having been married, and has been insane since 1872; that her surplus income annually amounts to $100,000; that her presumptive heirs at law and next of kin are her two sisters, Martha M. Wysong and the petitioner's mother, Louise M. Pollock. The mere facts that an incompetent has an ample fortune, that her income is large, and that it greatly exceeds her personal requirements afford, per se, no ground for giving away her property. The facts in the Fol-

som Case (no opinion filed) and Flagler Case (no opinion filed) do not apply to this situation. The applicants therein were shown to be in need or necessity, and in addition in the Flagler Case the incompetent had during her competency evinced kindly feelings and contributed by gift and income to the support of the applicant.

This motion is in all respects denied. There is no legal ground to warrant the expenditure of the incompetent's money for the payment of counsel for competent persons of independent means, hence the application of the petitioner for an allowance for his attorneys is not approved. As counsel for the committee appeared for the benefit and protection of the incompetent, he is entitled to an allowance for services rendered. Settle order accordingly and upon notice.