Joseph B. Johnson, a man of over sixty-three years of age, is a hopeless lunatic and has been such for over thirty years. His estate is of the value of upwards of $226,000 and the income therefrom was last year in excess of $12,000 per annum. The expense of maintenance of said lunatic has not exceeded the sum of approximately $2,500 per annum, leaving a surplus of income of $9,500, which has continually accumulated and become a part of the corpus of the estate.
The petitioner Mary J. Wilson and the petitioner Jerome B. Johnson are the next of kin of the lunatic. They each claim to be in destitute circumstances and each petition the court that an order may be made directing the Guarantee Trust Company of Atlantic City, New Jersey, guardian of the said Joseph B. Johnson, to show cause why it should not pay to them, individually, such portion of the income of said lunatic as to the court shall seem meet for the support and maintenance of the petitioners and their respective families. They each allege that they believe that if the lunatic were of sound mind that he would make provision for them and make use of a part of his income for their support.
This application does not come within the provisions of the supplement to an act concerning idiots and lunatics. *Page 270 P.L. 1909 p. 313; Comp. Stat. p. 2792 § 14-M. It provides for the application of surplus income for the support of the parent or parents, brother or brothers, sister or sisters, of the whole or half blood, who are without adequate means of support, c.
The first question for determination then is, has this court any power to grant such relief in the absence of statutory authority? The only case in this state which would give any assistance upon this point is In re Rogers, 96 N.J. Eq. 6. In this case the chancellor dismissed the petition because there was no allegation in the petition that the petitioner was without adequate means of support and dependent upon the bounty of others. Had the court held that there was common law jurisdiction, certainly the petition would not be dismissed because of the lack of jurisdictional requisites called for by the statute. The chancellor, however, went much further, and held that no common law duty devolved upon a brother or sister to support an indigent brother or sister.
Petitioners contend, however, that it could be shown to the court that if the incompetent were sane he would make such allowances. The general rule on this subject is that the court will do that, in these matters, which it is reasonable to believe the lunatic himself would do if he had the capacity to act. The decisions are numerous and all to this effect. The following are illustrative cases: Ex parte Whitbread, 2 Meriv. 99; In reWilloughby, 11 Paige (N.Y.) 257; In re Heeney, 2 Barb. Ch.
(N.Y.) 326; In re Drummond, 1 Myl. C. 624, as stated by Chief-Justice Beasley in Potter v. Berry, 53 N.J. Eq. 151. A very interesting annotation of this case was found in34 A.L.R. 297.
The testimony was very meagre in support of such contention. Counsel for the trust company, however, produced before the court an original will executed by Johnson before his adjudication as an insane person, devising and bequeathing all of his property to two other persons, one of whom is dead. No mention is made in this will of either of the petitioners or any other next of kin of Johnson. The petitioners *Page 271 
endeavored to show that Johnson, while incarcerated, wrote a note to the custodian of the will stating his desire to revoke the same. His incarceration was for the doing of certain acts considered as some proof or indication of his incapacity.
In In re Heeney, supra, Chancellor Walworth authorized the committee of the incompetent to permit two young ladies, not related in any way to the incompetent, to be supported as members of the incompetent's family, to have the education of one of them completed at the same expense at which the incompetent had educated her sister, and to continue allowances to three aged ladies, who were in no way related to the incompetent. The chancellor said:
"In the case of the late Dr. Willoughby, after a full examination of the subject, I came to the conclusion that the court of chancery had the power, out of the surplus (of the) income of the estate of a lunatic, to provide for the support of one who was not his next of kin, and whom the lunatic was under no legal obligation to support, where the chancellor was satisfied, beyond all reasonable doubt, that the lunatic himself would have provided for the support of such person if he had been of sound mind, so as to be legally competent to do so."
These allowances were gifts and not an account of applicants' interests in the incompetent's estate.
In Ex parte Whitbread (1816), supra, Lord Eldon, in discussing the reasons for granting allowances out of the estates of lunatics, said (pages 102 and 103):
"But the court does not do this because, if the lunatic were to die tomorrow, they would be entitled to the entire distribution of his estate; * * * and if we get to the principle, we find that it is not because the parties are next of kin of the lunatic, or, as such, have any right to an allowance, but because the court will not refuse to do, for the benefit of the lunatic, that which it is probable the lunatic himself would have done."
In In re Earl of Carysfort, Cr. Ph. Rep. 76; 41 Eng. Rep.
(full reprint) 418, an annuity was allowed out of the *Page 272 
income of the lunatic's estate as a retiring pension to an old personal servant of the lunatic, who was obliged to retire from his service by reason of age and infirmity. The lord chancellor said he thought the proposal as to the old servant very reasonable; but asked whether there was any precedent for it. On a subsequent day, Mr. Sidebottom stated that no precedent could be found, but that he was instructed to say, on behalf of the committees, that they were satisfied that the allowance was one which the lunatic, if he should ever recover, would improve; and the lord chancellor made the order.
In a well-considered case, Binney v. Rhode Island HospitalTrust Co. (Supreme Court of Rhode Island), 43 R.I. 222;110 Atl. Rep. 615, Mr. Justice Vincent, after quoting Ex parteWhitbread, supra, said:
"In Bradshaw v. Bradshaw, 1 Jac. Walk. 647, the object of the petition was to obtain an allowance for an infant who had an illegitimate brother born of the same father and mother, and who was unprovided for.
"In re Earl of Carysfort, 1 Cr. Phill. 76, an annuity was allowed out of the income of the lunatic's estate as a retiring pension to an old personal servant of the lunatic, who was obliged to retire from his service by reason of age and infirmity. Upon the inquiry of the lord chancellor as to whether there was any precedent for such an allowance, it was admitted that no precedent could be found. The next of kin consented to the order, which was accordingly made.
"In re Frost, 5 L.R. Chan. App. Cas. 699, there was a weekly allowance made to relatives in consideration of their poverty, and, upon evidence that the lunatic had intended to do something for them, the amount allowed to be taken into account against anything that they might ultimately become entitled to from the estate of the lunatic." * * *
"In 14 R.C.L. 579, there is a general statement of the law as to allowances from estates for other than legal obligations as follows:
"`A court of equity has power, out of the surplus income *Page 273 
of the estate of an insane person, to provide for the support of persons whom the insane person is not under legal obligation to support, where it specifically appears that the insane person himself would have provided for such support had he been sane. The court in making such allowances acts for the insane person as it supposes he himself would have acted if he had been of sound mind, and the amount and proportion of allowances thus made rest entirely within the discretion of the court. The power of the court to make allowances out of the estate of an insane person for the purpose of carrying out the presumed wishes of such person extends to the case of donations for charitable and religious purposes, but it has been held that the committee or guardian will not be allowed personally to expend any part of the estate for general charity or objects of benevolence or piety for which the insane person himself had not been in the habit of contributing specifically and regularly while sane.'
"It will be observed that nearly all of the authorities cited by the complainant and upon which he bases his claim for the continuation of the allowance, covering the period of Mrs. Goddard's disability and up to the time of her death, are largely founded upon conditions which do not obtain in the case at bar. These cases provide for the support of the family of the lunatic; for the support of blood relations in indigent or in straitened circumstances; and, in one case, for the support of an old personal servant, compelled to retire by reason of age and infirmity. None of these elements are to be found in the present suit. In the case of Strickland, supra, the court authorized a subscription for the building of a church and schools which had not even been projected prior to the insanity, but this was done on the petition of the committee, who was next of kin and heiress at law to the lunatic, upon the theory that the erection of such buildings would enhance the value of the remaining property, and therefore it is of little value as an authority in the present case.
"As stated by the Lord Chancellor in Re Blair, 1 Myl. Cr.300, we think that courts in making such allowances *Page 274 
should act with the greatest jealousy and caution, and that the principle involved should be narrowed rather than extended in its operation, and this view has received the sanction of other courts.
"The respondents claim that under the circumstances of the present case there is no sufficient reason why Mrs. Goddard's allowance to the complainant should be continued after her incompetency; that the complainant is a prosperous man; that he was not a relative of or next of kin to Mrs. Goddard; that the arrangement was not made to furnish him with support, nor was it made to keep up a home for Mrs. Goddard, all of which appear to be undisputed facts.
"The respondents cite a number of cases where allowances out of the estate of the lunatic have been refused:
"In re Grove, 13 L.J. Ch. (N.S.) 262, a petition by the committee, sister, and sole next of kin of a lunatic to apply part of the lunatic's income for the purpose of support of illegitimate children of the lunatic's deceased brother was denied. The lord chancellor disregarded a suggestion of the petition that the lunatic would no doubt have also contributed toward their support if she was not incapable of doing so. The court increased the allowance to the lunatic on the ground that his income had increased, expressly stating that —
"`It must be understood that the increase was not made from any consideration of the illegitimate children of the lunatic's brother.'
"In re Earl of Lanesborough, 7 Ir. Eq. 606, an allowance out of the estate of a lunatic to assist in educating children entitled to the estate in remainder was refused.
"In re Evans, 21 Chan. Div. 297, where the lunatic's committee approved an application by a respectable, aged clergyman, who was a first cousin and next of kin of the lunatic, for an allowance, and it appeared that the lunatic had a large surplus income, and that the applicant was in great need and a worthy man, the application was refused. The opinion says:
"`I concur with Lord Cottenham in thinking that the practice *Page 275 
of giving away a lunatic's property ought to be narrowed rather than extended. It is not the province of this court to give general charity at the expense of a lunatic's estate.'
To which Lindley, L.J., added:
"`The court ought not to give away a lunatic's property for the benefit of other people; it ought to act only with a view to the benefit of the lunatic.'
"In re Kernochan, 84 Misc. Rep. 565; 146 N.Y. Supp. 1026, the petitioner, who was in no need of financial assistance, applied for an allowance from the estate of an incompetent aunt. He was a blood relative. The court refused to make the allowance, and in the course of its opinion, said:
"`The law may be briefly stated. Before an allowance may be granted from an incompetent's estate to one to whom the incompetent owes no duty of support, it must be established that the incompetent, if sane, would make the allowance. The proof required is that the incompetent should have known the applicant, and should have indicated, while sane, by acts or words, that he or she had such an intention to support the applicant; or that such facts and circumstances be made to appear as would show beyond a reasonable doubt that the incompetent, if sane, would assume such a burden. The courts are required to scrutinize the evidence submitted upon such an application with caution, recognizing that such applications should be narrowed and discouraged rather than extended or encouraged. There must exist a real need or a necessity upon the part of the applicant to be provided for, the court being mindful that it does nothing wantonly or unnecessarily; and, finally, it is not the duty of the court to deal benevolently or charitably with the property of the incompetent.'
"In re Darling, 39 Chan. Div. L.R. 208, the lunatic was a bachelor eighty-two years of age, whose next of kin were six cousins ex parte paterna and four cousins ex parte materna.
When sane he had been in the habit of making small allowances to three of those cousins who were in humble circumstances. The master in lunacy recommended that the *Page 276 
allowances be increased, and that further allowances should be made to three other cousins, all of them being in impecunious circumstances. The court refused to sanction an increase of the allowances already made or further allowances to others, and said in its opinion:
"`Undoubtedly we do sometimes make considerable allowances for persons who have legal claims upon a lunatic, such as a son or a daughter, and also for persons who have moral claims upon him. But it is not our business to deal benevolently or charitably with the property of the lunatic. * * * Applications for allowances of this kind ought to be discouraged rather than encouraged. * * * Now to make such an order would, in my opinion, be contrary to the principles on which the court acts in administering the property of a lunatic.'
"In a number of cases, including some of those which we have cited and others which we have examined, allowances have been granted with hesitation and sometimes upon conditions requiring repayment; the beneficiary not being in indigent circumstances or incapable by reason of age or infirmity. Re Blair, 1 Myl. Cr.300, 302; Re Croft, 32 L.J. (N.S.) Ch. 481; Re Darling, 39L.R. Ch. Div. 208; Re Frost, 5 L.R. Ch. App. 699; Re Sparrow, 20L.R. Ch. Div. 320; Re Fowler, 6 Jur. 431."
I am unable to find the evidence sufficient to show that the lunatic himself would have provided for the support of the two petitioners had he been sane.
 The petition will be dismissed. *Page 277