[No. 27254. Department Two. December 8, 1938.]

*In the Matter of the Guardianship of* FERN P. DE-NISSON, *an Incompetent Person.*

A. C. DENISSON, *Respondent,* v. NATIONAL BANK OF COMMERCE OF SEATTLE, *as Guardian, Appellant.*[1]

[1]Reported in 84 P. (2d) 1024.

*Irving D. Smith,* for appellant.

*Horace W. Hall,* for respondent.

STEINERT, C. J.—In the course of a guardianship proceeding, the former guardian, who is the husband, of an incompetent person filed his final account, incorporating therein a petition for a monthly allowance to himself out of his wife's estate. The matter came on for hearing before the court and was resisted by the substituted, and present, guardian. The court, after taking evidence, made its findings and entered a decree settling the account and directing payment of a monthly allowance to the husband out of the estate. The present guardian has appealed.

A. C. DeNisson, respondent herein, and Fern P. DeNisson, the incompetent, have been married to each other three times. The first marriage took place in 1925, the last in 1936. During the period between those years, they were twice divorced. At the time of the hearing of this case in the court below, Mr. DeNisson was eighty-eight years of age, Mrs. DeNisson was forty-seven.

Most, if not all, of the property involved in the guardianship proceeding was at one time community property which had been earned by the husband. This property was, however, awarded, in the first divorce action, to the wife, and ever since that time it has been her separate estate. The bulk of the property consists of real estate, the value of which, ac-

cording to the appraisement, is $8,300. It has produced practically no income.

On August 16, 1937, Mrs. DeNisson having been found to be mentally incompetent, Mr. DeNisson was appointed guardian of her person and estate. He duly qualified and, subsequently, served in that capacity until October 27, 1937, when he was removed, and the National Bank of Commerce was appointed in his stead. In the meantime, on September 4, 1937, Mrs. DeNisson was adjudged insane and was committed to the Northern State Hospital. During the period of her incompetency, and until her commitment, Mrs. DeNisson was in the custody of her husband, who gave her every required care and attention.

Mr. DeNisson began the administration of his wife's estate with the sum of $2.46 cash. With leave of court, he negotiated a loan, from which he realized $147. He collected two monthly installments, aggregating $39.50, upon a real estate contract belonging to the estate. His total receipts amounted to $188.96. He expended for the care, support, and maintenance of his ward and her property the sum of $158.85. He expended upon one of the houses of the ward personal labor, for which he asked to be reimbursed in the sum of $261. The court approved the money expenditures and allowed Mr. DeNisson $150 for his personal labor, $100 as guardian fee, and $87.18 for attorney's fee and costs.

The evidence showed that, at the time of the commencement of the guardianship proceeding, Mr. DeNisson himself was penniless and destitute; wherefore, in his final petition, he asked the court to allow him, out of the estate, the sum of fifty dollars a month for his living expenses. At the hearing, it appeared that he had, in the meantime, been granted state old-age assistance in the sum of twenty dollars a month.

In its decree, the court ordered that he be paid, out of the estate, the sum of thirty dollars per month, beginning January 1, 1938.

Upon this appeal, appellant takes the position that, in any event, the decree is not binding on the ward because no guardian *ad litem* was appointed to represent her at the final hearing.

Rem. Rev. Stat., § 188 [P. C. § 8269], provides:

"When an insane person is a party to an action in the superior courts he shall appear by guardian, or if he has no guardian, or in the opinion of the court the guardian is an improper person, the court will appoint one to act as guardian ad litem. . . ."

The appellant bank, which was at the time of the hearing the qualified and acting guardian, appeared, with its attorney, on behalf of the ward and throughout the proceeding vigorously resisted respondent's petition. A guardian *ad litem* could have done nothing more.

Appellant relies upon the case of *Mathieu v. United States Fidelity & Guaranty Co.*, 158 Wash. 396, 290 Pac. 1003. In that case, it appeared that the guardian of an insane person had filed his final account and petition for discharge. Upon a hearing, the final account was disapproved, and the guardian was removed, and a successor appointed. In the meantime, the former guardian had secured, in California, the appointment of himself as guardian of the insane person. After his removal from office in this state, he appeared in the California court, filed his final account, which was approved, and obtained his discharge. At the final hearing in the California court, the ward was not represented by a guardian *ad litem* "or in any other way." In the case which came to this court on appeal, it was contended that full faith and credit should be given to the decree of the California

court. In rejecting that contention, we held that, in rendering his final account and asking for a discharge in the California court, the former guardian was acting in an adversary capacity in so far as the interests of the ward were concerned.

The situation in this case is quite different. At the hearing in question, the ward was actually represented by a guardian who, in resisting respondent's petition, was the active champion of the ward and a jealous protector of her interests. The court had complete jurisdiction of the subject-matter, and all the parties were before it. The decree is, therefore, binding on the ward, unless it is erroneous upon some other ground.

The most important, as well as the most serious, question in the case is, as asserted by appellant, whether the court erred in awarding respondent husband a monthly allowance out of the insane wife's estate.

It appears to be a generally accepted principle that a court having the power of our probate court may, in a proper proceeding, allow a wife support and maintenance out of the estate of her incompetent or insane husband. *In re Senate Resolution,* 12 Colo. 340, 21 Pac. 485; *Tiffany v. Worthington,* 96 Iowa 560, 65 N. W. 817; *In re Leech,* 45 La. Ann. 194, 12 So. 126; *Lemly v. Ellis,* 146 N. C. 221, 59 S. E. 683; *Reynolds v. Reynolds,* 208 N. C. 254, 180 S. E. 70. See, also, *Booth v. Cottingham,* 126 Ind. 431, 26 N. E. 84; *Hallett v. Hallett,* 8 Ind. App. 305, 34 N. E. 740; *In re Burgin,* 191 Iowa 917, 183 N. W. 801.

Whether, in this state, a similar provision may be made for the husband out of the estate of his incompetent or insane wife depends, primarily, upon the meaning of the term "expenses of the family," as used

in Rem. Rev. Stat., § 6906 [P. C. § 1431], which reads as follows:

"The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately."

We have had occasion, a number of times, to construe or refer to this statute.

In *Russell v. Graumann,* 40 Wash. 667, 82 Pac. 998, 5 Ann. Cas. 830, wherein medical and hospital services had been rendered to a husband during his last illness and while his wife was sojourning in a distant state, it was held, upon a suit by a creditor, that the wife was separately liable for the expense incurred. We quote from the opinion:

"That ordinary medical aid and advice for the wife create family expenses has been repeatedly held. 15 Am. & Eng. Ency. Law (2d ed.), 877, and cases cited. The husband is a part of the ordinary family, and under a statute providing in general terms for liability for 'expenses of the family,' as does our statute quoted above, we see no reason why medical and hospital services rendered to a husband are not as fully comprehended in the statute as are those rendered to a wife."

In *Butterworth & Sons v. Teale,* 54 Wash. 14, 102 Pac. 768, it was indicated, though not decided, that burial expenses of a deceased husband might be classed as a family expense within the meaning of the statute.

In *Haddad v. Chapin,* 153 Wash. 163, 279 Pac. 583, it was said that a wife was liable, under the statute, for merchandise purchased and used for the support and maintenance of the family. In that particular case, however, the wife prevailed, upon her defense that the action was barred by the statute of limitations.

In *Roberts v. Warness,* 165 Wash. 266, 5 P. (2d) 495, it was held that the expense of a surgical operation performed upon the wife at her request fell within the statute and that the surviving husband was separately liable therefor.

It thus appears that the term "expenses of the family" includes not only merchandise used by the family as a whole, but also certain expenses, such as medical aid, hospital services, and burial attendance, incurred or supplied for the immediate or personal benefit of but one of the spouses, and that in either event the other spouse may be held separately liable therefor.

The "family" may, as in the case at bar, be without children or other dependents, and consist simply of husband and wife. But it is nonetheless a family. We have held that a surviving widow constitutes a family within the meaning of Rem. Rev. Stat., § 1476 [P. C. § 9896], which provides for allowances out of a decedent's estate "for the maintenance of the family." *In re Hooper's Estate,* 117 Wash. 463, 201 Pac. 740; *In re Andrews' Estate,* 123 Wash. 546, 212 Pac. 1073; *In re Behre's Estate,* 130 Wash. 458, 227 Pac. 859; *In re Hilleware's Estate,* 159 Wash. 580, 294 Pac. 230. If one spouse, surviving the death of the other, constitutes a family, then, certainly, both spouses, if living in the marriage relation, constitute a family.

We have, in this case, however, one peculiar fact, and out of that fact has grown this controversy. Although the husband and wife are both alive, they are not at present living together, owing to the unfortunate mental condition of the wife. But it is not always necessary, in law, that, in order to constitute a family, the members thereof reside together under one roof.

In *Russell v. Graumann,* 40 Wash. 667, 82 Pac. 998, cited above, we took notice of such circumstances and said:

"The evidence discloses that for about three years the deceased had been residing in Spokane, where he pursued his occupation as a painter. During at least a part of that time the respondent [wife] was not in Spokane, but it is not established by the evidence, as we view it, that she was not at any time in Spokane with her husband. During his last illness, and at the time of his death, she was in the state of Pennsylvania. But, assuming that respondent may not at any time have been with her husband in the city of Spokane, it does not follow from that fact alone that the family relationship had in a legal sense been severed. It is not necessary that the husband and wife shall at all times reside together under the same roof, in order that the legal status of the family may be preserved."

The opinion then points out the circumstances that may constitute merely a continued absence, as distinguished from a severance of the marriage relationship.

In *In re Hooper's Estate,* 117 Wash. 463, 201 Pac. 740, it was held that the word "family," as used in the statute now designated as Rem. Rev. Stat., § 6906, was not to be restricted to a collection of persons under one roof.

The same thought has been expressed and the same conclusion adopted by the courts generally in construing the word "family," as used in exemption statutes, and also as used, in one case, in a testamentary trust. *Baum v. Turner,* 25 Ky. Law 600, 76 S. W. 129; *Stephens v. Stephens,* 139 Ky. 810, 85 S. W. 1093; *Berry v. Hanks,* 28 Ill. App. 51; *In re Shedd's Estate,* 60 Hun 367, 14 N. Y. Supp. 841 (affirmed on opinion below, 133 N. Y. 601, 30 N. E. 1147); *Oberndorf v. Farmer's Loan & Trust Co.,* 71 Misc. 64, 129 N. Y. Supp.

814, 148 App. Div. 227, 132 N. Y. Supp. 1004, 208 N. Y. 367, 102 N. E. 534; *State v. Finn,* 8 Mo. App. 261; *In re Osborn's Estate,* 220 N. Y. 595, 115 N. E. 1045; *In re Burridge's Estate,* 261 N. Y. 225, 185 N. E. 81; *In re McFarland,* 49 F. (2d) 342.

Appellant relies upon the case of *Vose v. Myott,* 141 Iowa 506, 120 N. W. 58, 21 L. R. A. (N. S.) 277, wherein recovery against a wife for board furnished to her husband was denied. In construing the statute of that state, which made "the expenses of the family chargeable upon the property of both husband and wife or either of them," the court held that "family expenses" were confined to obligations incurred for something which is intended, nominally at least, for the use or comfort of the collection or personality which is spoken of as the family, or for the house of some member of the family, as distinguished from individual or personal expenses not contributing to family convenience, enjoyment, or comfort. After citing a number of illustrations of what had been held in that state to be family expenses, the court stated that it would possibly not be an undue expansion of the rule to say that, if a member of the family should meet with accident or was suddenly prostrated with sickness when away from home, or if, being sick at home, he went to a sanitarium or elsewhere for treatment or benefit to his health, the courts would be disposed to hold the expense thus incurred to be of the class for which both the husband and wife are liable; but, that the term "family expenses" could not, under any reasonable construction of the statute, be stretched to include the travelling expenses, hotel bills, and board bills of the husband unless under extraordinary circumstances such as were not present in the case.

However, in that very case it appears, from the opinion, that the husband had left the wife in con-

templation of a separation and, except for a brief visit, had lived separate and apart from her ever since; further, that, although the husband was suffering from rheumatism at the time of his departure, there was nothing to indicate any reasonable necessity of the journey for the purpose of medical treatment or that such was in fact the motive that led to his going. In point of fact, that case very well illustrates the distinction that we have hereinbefore made between enforced absence and intentional separation. In any event, we consider dire and immediate necessity for sustenance as much an extraordinary circumstance as an accident or a protracted illness. We do not think that the Iowa case, when carefully considered, militates at all against our position.

From our analysis of the cases, and upon what we consider sound reasoning, we conclude that a wife's estate is separately liable for the expense incurred for the necessary and actual maintenance and support of an aged and indigent husband, provided that the marital relationship has not been severed and there has been no intentional separation.

The question, then, arises whether the court had the power to anticipate an accrual or accumulation of debts incurred for the support and maintenance of respondent, and directly to make an allowance for the same purpose. To state the question, it seems to us, is to answer it. The court could, certainly, have made an allowance out of the wife's estate for the purpose of paying an incurred expense which, under Rem. Rev. Stat., § 6906, would have been chargeable upon the separate property of the wife. If this be true, then, as we view it, the court, having theretofore assumed jurisdiction over the wife and her property, has the power to make an award from her estate sufficient to provide against the cer-

tainty of such expense. We apply to the situation the logic employed by the court in the case of *In re Leech*, 45 La. Ann. 194, 12 So. 126, cited above. In that case, the court, after using language to the effect that a wife could contract debts for her support and thereby bind her husband, concluded in these words:

"It follows that she must have the right to obtain directly the support which she can secure by incurring debts for the purpose."

It is not contended in the case at bar that the amount allowed is greater than that which is actually necessary to support and maintain respondent under his present condition.

The extent of the court's power in such matters is strikingly illustrated by a number of cases that have come to our attention. *Potter v. Berry*, 53 N. J. Eq. 151, 32 Atl. 259, 51 Am. St. 626, 34 L. R. A. 297; *In re Johnson*, 111 N. J. Eq. 268, 162 Atl. 96; *Farwell v. Commissioner of Internal Revenue*, 38 F. (2d) 791 (C. C. A., 2d); and others collected in 59 A. L. R. 653, 34 L. R. A. 297 and 32 Law Notes 128. It appears from those cases that courts of equity, both in England and in this country, have on occasion made an allowance out of an incompetent person's estate for the support and maintenance of persons whom the incompetent has no legal, or even moral, duty to support. The reason given for such action is that, in such matters, the court will endeavor to do that which it has reason to believe the insane person would have done, had he the mental capacity to act.

We cite these cases, not as indicating what we might hold under similar extraordinary circumstances, but only to illustrate and emphasize the power of the court in the premises. That power must, of course, in any event, be exercised with circumspection and sound discretion.

276

We are of the opinion that, in the case before us, the award was made to cover anticipated expenses which, if incurred, would come within the meaning of Rem. Rev. Stat., § 6906, that the court had the power to make such award, and that the exercise of that power was dictated by a sound discretion. The award is, therefore, approved.

Appellant finally contends that the court erred in allowing respondent anything for expenditures made by him in the course of administration, or allowing him anything by way of fees. The court heard and carefully considered the evidence touching those matters, and we are unable to find anything in the record indicating error in its conclusion. It seems to us that the court was eminently fair to both parties.

The decree is affirmed.

SIMPSON, BEALS, MILLARD, and GERAGHTY, JJ., concur.