In the Matter of HENRY S. SCHLEY, SR., an Alleged Incompetent.

Supreme Court, Special Term, Queens County, June 5, 1951.

*William W. Owens* and *Mary R. Cowell* for Dorothy B. Schley, petitioner.

*Thomas F. Boyle,* special guardian for Sturges B. Schley, Jr.

*Leo Fishel* and *Edward J. Neary* for Nassau County Trust Co., as committee of Henry S. Schley, Sr., an incompetent.

*Joseph A. Howard, Jr.,* and *J. Ehret Mahoney* for Adele M. Schley and another, respondents.

*Roy P. Monahan* for Carol K. Schley.

*Peter V. Snyder* and *Richard Schoenfeld* for Arline B. Schley.

*Leon M. Coleman* and *Richard J. Hallinan,* in person, for Richard J. Hallinan, as special guardian for Henry S. Schley, Sr., an incompetent, and others.

DALY, J. This is an application for an allowance from the estate of an incompetent for the support and maintenance of petitioner, Dorothy Belsterling Schley, and of her fifteen-year-old son; the petition of one Carol Kelly Schley for an allowance for herself alone having been dismissed by this court at a hearing held before it on May 7, 1951, without prejudice, however, to renewal if she were so advised.

The incompetent is one Henry Spaulding Schley, now seventy-one years of age. His wife, Adele Mason Schley, is also seventy-one years of age. They were married in 1904, two children being born of the marriage: Henry Spaulding Schley, Jr., now aged forty-six, and Sturges Mason Schley, who died in September, 1950, at the age of forty-three. Henry Spaulding Schley, Jr., and Arline Bennett Schley were married in 1930 and had two children: Diane, now nineteen, and Henry III, now seventeen. Sturges Mason Schley and Dorothy Belsterling Schley, the petitioner herein, were also married in 1930. One child was born to them: Sturges Belsterling Schley, now fifteen years of age.

Henry Spaulding Schley, Sr., was adjudicated an incompetent by order of this court dated May 20, 1938, the result of a proceeding instituted by his daughter-in-law, Arline, wife of Henry, Jr. It should be noted, however, that the incompetent had been continuously confined in an institution for the insane since 1924. Approximately nine months after such confinement he executed a power of attorney to his wife who from then on (and as, apparently, she had for several years prior thereto) collected and distributed the income from his estate. The order of May 20, 1938, by which Henry, Sr., was adjudicated an incompetent, referred to and substantially adopted the provisions of an agreement which had been entered into between Adele, wife of the incompetent, their two sons, Henry, Jr., and Sturges, and Arline, wife of Henry, Jr. That order, after providing for the incompetent and the expenses of administering his estate, made the following annual allowances, payable monthly, from the income remaining: Adele, $12,000; Henry, Jr., $5,000; Sturges, $5,000, and Kenneth Mason, brother-in-law of the incompetent, $1,200. Of the $5,000 allotted to each of the two sons, $3,600 was to be paid by the committee directly to their respective wives for their support and the support of their infant children.

Thereafter, the income from the incompetent's estate became insufficient to make the payments provided in the order of May 20, 1938. Accordingly, on petition of the committee, that

order was amended by order dated May 27, 1943, which provided for distribution of surplus income as follows: Adele, 64%; Arline, 55% of the remaining 36%; Dorothy, 45% of the remaining 36%, but in the event that Arline's share amounted to $3,600 she was to receive no more until Dorothy had also received $3,600. No provision was made in this order for the sons of the incompetent since they had agreed to forego their right to receive any payments, and the provision made for Kenneth Mason, brother-in-law of the incompetent, in the original order was also omitted since Kenneth was no longer living.

In 1947, it then appearing that there had been an increase in the funds available for distribution, the order of May 20, 1938, was further amended, on application of Sturges, to provide, as to the same parties, substantially as had been provided in the order of May 27, 1943, except that Adele's percentage could in no case exceed $12,000 a year and the percentages of Arline and Dorothy, respectively, $3,600 a year for each. If, after distribution of the maximum amount to Adele, Arline and Dorothy, income still remained, Henry, Jr., and Sturges were to share it equally; not, however, in an amount to exceed $1,400 a year for each. In effect, these provisions constituted a return to the provisions of the original order.

Upon the death of Sturges in September, 1950, the committee ceased making the monthly payments to Dorothy. She then instituted this proceeding, as widow of Sturges, for a one-third share in the surplus income of the incompetent's estate for the support and maintenance of herself and her infant son. The respondents, Adele and her son, Henry, Jr., insist that Dorothy is not the widow of Sturges since he obtained a divorce from her in Florida in 1940; subsequently entered into a second marriage, which also terminated in divorce; and thereafter, in 1948, married Carol Kelly Schley, with whom he was living at the time of his death. The Florida divorce, however, was obtained on constructive service and Dorothy did not appear in the action, either personally or by attorney. On those facts the divorce decree, though prima facie valid, would be subject to collateral attack in this State on the ground that the domicile of Sturges in Florida was not genuine. (*Rice* v. *Rice,* 336 U. S. 674; *Williams* v. *North Carolina,* 325 U. S. 226; *Matter of Franklin* v. *Franklin,* 295 N. Y. 431.) The view, however, that this court takes of the present controversy, as will subsequently appear, renders it unnecessary to determine whether the Florida decree is entitled to full faith and credit in this State.

Assuming that Dorothy is the widow of Sturges and, therefore, a daughter-in-law of the incompetent, the initial inquiry is whether she is a member of his " family," within the meaning of section 1357 of the Civil Practice Act, and thus *entitled* to an allowance for her support out of the estate of the incompetent.

Section 1357 of the Civil Practice Act provides: " *Duty of court having jurisdiction.* The court exercising jurisdiction over the property of either of the incompetent persons, specified in the last section, must preserve his property from waste or destruction; and, out of the proceeds thereof, must provide for the payment of his debts and for the safe keeping and maintenance, and the education, when required, of the incompetent person and his family."

As this court reads that section, it is convinced that the word " family," as used therein, was intended to include only those persons for whose " safe keeping and maintenance, and the education, when required," the incompetent would be legally liable. That conclusion is dictated by the very language of the statute. It speaks of the *duty* of the court having jurisdiction; its mandate is that the court *must* make provision. It cannot reasonably be said that the Legislature intended to require the court, which under the very same section, " must preserve " the property of the incompetent " from waste or destruction," to provide with funds from his estate those persons for whom the incompetent himself, were he sane, need not provide.

Support for the foregoing view is also found in *Matter of Kernochan* (84 Misc. 565) where Mr. Justice COHALAN, in refusing an allowance to the nephew of an incompetent, observed, during the course of his opinion (p. 569): " The incompetent is under no duty to support the petitioner. If the application had been presented by the son or wife of an incompetent, or an indigent person who stood in such relationship to the incompetent that the incompetent would be under an obligation to support the petitioner, the duty and the power of the court, limited only by the amount involved, would be obvious."

Since the incompetent is under no legal obligation to support his daughter-in-law (Social Welfare Law, § 101, subd. 1; 1934 Atty. Gen. [Inf.], 51 N. Y. St. Dept. Rep. 259), it follows that Dorothy is not entitled to an allowance on the ground that she is a member of his " family " within the meaning of section 1357 of the Civil Practice Act.

The next inquiry is whether Dorothy may be awarded an allowance, in the discretion of the court, on the theory that the incompetent would in all probability make such an allowance

were he competent to do so. (See, e.g., *Matter of Flagler,* 248 N. Y. 415; *Matter of Fleming,* 173 Misc. 851; *Matter of Heeney,* 2 Barb. Ch. 326; *Ex parte Whitbread,* 2 Mer. 99, 102, 35 Eng. Rep. 878; Shelford on Lunatics [2d ed.], p. 205, and Smoot on the Law of Insanity, § 388, p. 319.) The factors to be considered in reaching a conclusion are the size of the estate, the present and probable future requirements of the incompetent, the requirements of those whom he is under a duty to support, the need of the person seeking the allowance, and the relationship and intimacy which such person and the incompetent bore to each other prior to the adjudication. (*Matter of Fleming, supra,* p. 853; *Matter of Kernochan, supra,* pp. 569–570.)

Consideration need not be given to all of the foregoing factors since, under the circumstances here presented, the court is of the opinion that Dorothy has not shown either the necessity for an allowance or a prior relationship with the incompetent as would justify this court's exercising its discretion in her favor. (Cf. *Matter of Heeney, supra.*)

It is to be noted that '' The court may not be moved by its own generous impulses in the disposition of the income of the incompetent.'' (*Matter of Flagler, supra,* p. 418.) In the case at bar the income of the incompetent is sufficiently large to permit an allowance. His estate consists of a testamentary trust in the sum of approximately $1,140,000 set up by the will of his mother in his behalf as life beneficiary; and the income therefrom has averaged, in recent years, about $40,000 annually, although for the year 1950 it reached a high of roughly $45,000. But those facts alone are insufficient to warrant granting an allowance. The need of the applicant must be shown. Concededly, Dorothy has very little funds of her own. She is, however, able to work. Furthermore, her father, a man seventy-seven years of age, has a yearly income slightly in excess of $18,000. He presently shares an apartment with his wife, step-daughter and her husband. There is, it is true, another daughter to whose support he contributes $1,100 annually. But expenses for rent and food for himself and his wife come to only $3,600 a year. He continues to maintain his membership in several clubs, paying in all annual dues in the sum of approximately $1,500. Evidence is not lacking that he has in the past given financial assistance to his daughter, the petitioner herein, when such assistance was needed. This court does not believe either that he can not or will not offer similar assistance in the future. Since he is able to provide Dorothy with some help, it is to him, not to her father-in-law, that she must turn.

But even if it be found that the need of the petitioner has been demonstrated, that alone would seem not to be sufficient to grant her application. (*Matter of Evans,* 21 L. R. Ch. Div. 297.) The incompetent did not know Dorothy. In fact, she admitted at the hearing of May 7, 1951, that she had never seen him. Under such circumstances, it would be speculation of the wildest sort to say that the incompetent would probably provide for her were he competent to do so.

The application of Dorothy Belsterling Schley for her support and maintenance is, accordingly, in all respects denied.

An opposite result, however, is reached as to her infant son, grandson of the incompetent. The incompetent is secondarily liable for the boy's support. (*Matter of Larkin* v. *Larkin,* 262 App. Div. 868; " *Panzo* " v. " *Panzo* ", 192 Misc. 989, 997.) Such being the case, he is a person reasonably to be included within the word " family," as that word is used in section 1357 of the Civil Practice Act, and is, upon the facts shown herein, entitled to be provided for out of the estate of the incompetent, it being amply sufficient for such purpose. (See, generally, Smoot on the Law of Insanity, pp. 316–320.) Even if it were to be said, however, that the grandson of the incompetent is not a member of his " family " within the meaning of the statute, this court is convinced that the incompetent would, if sane, make some allowance for the boy's support, maintenance and education. It is true that the incompetent does not know his grandson. But the close blood relationship existing between the two seems sufficient to counteract such lack of knowledge. Sturges, if he survives his grandfather, stands to inherit one half of the corpus of a trust which is in excess of $1,000,000. It would seem, under such circumstances, that it would naturally be agreeable to the incompetent that his grandson should receive an education and maintenance suitable to his condition. (See *Ex parte Whitbread,* 2 Mer. 99, 102, 35 Eng. Rep. 878, 879, *supra.*) That he would prefer instead to see him receive his education partly because of the beneficence of an educational institution, as he does at present, seems quite unlikely. " Few would so act under the circumstances here disclosed ". (*Matter of Flagler, supra,* p. 419.)

It may be noted in conclusion that the order of May 20, 1938, above referred to, contains a recital that it appeared to the satisfaction of the court granting the order that Sturges Belsterling Schley (therein referred to as Sturges Mason Schley, Jr.) was one for whom the incompetent, if sane, would have made provision.

The application is accordingly granted as to Sturges Belsterling Schley. He is allowed 45% of 36% of the surplus income, payable monthly, which percentage is in no event to exceed $3,600 a year. Payments will be made to the general guardian to be appointed for him.

Settle order on notice.