Robert E. Dempsey, J.
The son and daughter of an aged incompetent petition this court for permission to make equal gifts to themselves of the sum of $500,000 from the incompetent’s estate, the sum being about one half of the incompetent’s estate. The basis for the requested order is to cut down on the burden of excessive taxes against the estate and to permit the enjoyment of property of the incompetent by her family during her lifetime. A special guardian appointed for the incompetent, in his report, joins in the application and recommends approval of the petition.
The basic principle advanced on behalf of petitioner in commending this course of action to this court, is that this court has the power and authority to determine ‘ ‘ whether to authorize transfers of the property of the incompetent for the purpose of avoiding unnecessary estate or inheritance taxes or expenses of administration, and tp authorize such action where it appears from all of the circumstances that the ward, if sane, as a reasonably prudent man, would so plan his estate, there being no substantial evidence of a contrary intent.” (Matter of Christian-sen, 248 Cal. App. 2d 398, 424.) The Christiansen case is a well-reasoned and documented review of the applicable law and expounds the “ substituted judgment ” rule; i.e., that the court would upon available evidence substitute its judgment for that of *102 the incompetent. In principle this court accepts the doctrine as advanced, but finds that proof in the form of testimony is required before a determination of the request of petitioners can be passed upon.
Petitioners’ counsel urges that the judicial path has been blazed in the State of New York by the ruling in Matter of Carson (39 Misc 2d 544). It is well to note at this point that great attention was devoted in Christiansen to the Carson case and that the California, New York, and Delaware courts all comment on the effort to follow a testamentary scheme in the exercise of the ‘ ‘ substituted judgment ’ ’. This concern becomes a vital indication for the court’s ultimate ruling. Hence, this court devotes some attention to the details of Carson. Here, in Carson, at the time of the submission to the approving court, the incompetent was ‘ ‘ in extremis ’ ’ and died within six days after the signing of the order directing payment; further, the order authorized a gift of a portion of the corpus to petitioner and his sister ‘ ‘ who constituted the next of kin, the only known relatives and the principal legatees under the incompetent’s last will and testament Overlooked in the Carson case, but which later had to be resolved, was the fact that the will of the incompetent provided for a postponed payment of the principal to the daughter until she was 40 years of age. Between the signing of the order directing distribution of a part of the corpus and the decision in 39 Misc 2d 544, the court remarked that redelivery of the distributed share to the daughter had been made to the estate of the then deceased incompetent. A pattern evolves then that the court will give great heed, among other circumstances, in making a 11 substituted judgment ’ ’ decision to the testamentary desire of the incompetent. As to the power of the court to make a direction of a gift as against contra expressed terms of the unprobated last will and testament, Carson did not attempt to pass upon it, but it is approached in Christiansen. In the brief for petitioner, able counsel cited the impressive Dupont case (41 Del. Ch. 300 [1963]), but here again the Delaware court noted that such gift, in addition to effecting very substantial tax savings duplicated the testamentary plan of the incompetent’s will as one of the bases for its ruling. Obviously, the testamentary plan of the incompetent becomes an important but not necessarily a determinative issue.
From the petition and report, in this instant proceeding, it appears that incompetent is 86 years of age. Petitioner offers no actual medical proof as to her life expectancy but submits an actuarial life expectancy of 4.7 years. The director of the hospital where the incompetent now is does not express any opinion *103 on her expectancy. In fact, he says, that he has no opinion as to her life expectancy. There is no medical evidence in the papers submitted as to her mental condition beyond the statement by the director that she is “ confused ” and that this deterioration is progressive and will not change for the better; and then there is the allegation in paragraph 7 of the petition that the condition of the incompetent is ‘1 incurable ’ ’. What her condition is does not clearly appear and should be affirmatively established. (See medical proof in Christiansen at page 424 et seq. and this was one of the “ Criteria for Authorization” spelled out in Christiansen.) Still, in a more comprehensive exploration, there is a very important item apparent in the will of the incompetent (attached as Exhibit C to the petition). Although it is submitted in the petition that the testamentary scheme leaves petitioner and his sister as her only heirs at law, next of kin and sole legatees, the will does, in paragraph Third thereof, provide that before the tangible personal property shall vest in the son and daughter, there is a condition that the son and daughter shall survive the incompetent; and that she so intended survival is illuminated in paragraph Sixth, the residuary clause of her will, where there is an obvious provision that in the event the son or daughter or both should predecease the incompetent, the share so bequeathed to the son or daughter goes over to the issue of the son and daughter. In her testamentary scheme, the incompetent provided that her only children in order to be the beneficiaries of her bequests have to survive her. (Again not determinative, but important that there should be testimony on this phase of the will.) In Christiansen (supra) there was no will available for use in aiding the court, but that court did not preclude the making of a gift in the face of an adverse testamentary document, as it said (pp. 426-427): “ Where there is a will, the incompetent has furnished evidence of the objects of his bounty, and the manner in which he wishes them to share in his estate. The gift program preempts the natural course of events and further that: “it is not unreasonable that a grandmother * * * would make gifts to her grandchildren as well as her own children. On the other hand, in the absence of such consent, or intent, it would appear that the gifts would have to go to the branches of the family in the shares in which they would inherit. ” Then the California court discussed that the record should present some evidence of the relationship of the donee with the incompetent to fortify a finding that they would be objects of the incompetent’s bounty. Thus, the Christiansen court suggested that if the incompetent were a reasonably prudent aged lady she might well favorably consider that it would be to her *104 advantage to make these gifts if she cotild do so without prejudice to her own welfafe ahd tiiUs effect what would he a substantial tax savings to he:* Ultimate beheflciaries.
Petitioners will sUbini; orders to this court providing" for a plenary hearing, at which time proof should be offered, encompassing as a minimum the criteria enunciated in the Christiansen case, and decision will be resolved on the petition pending the determination and findings oh said hearing.