Joseph F. G-aguiardi, J.
Application by petitioners (the wife and three children of the incompetent) for an order granting gifts for the year 1969 from the estate of the incompetent.
On October 17, 1969, after a jury trial, respondent was adjudged incompetent pursuant to article 5-A of the Mental Hygiene Law. The jury found the value of respondent’s real and personal property to be approximately $300,000. Life insurance policies inuring to the benefit of petitioner Veronica Turner (respondent’s wife) in the principal amount of $90,000 were excluded because they have no present cash surrender value. The jury also determined respondent’s annual income to be approximately $24,000.
Immediately after the trial and pursuant to a petition previously served upon respondent’s special guardian, an ancillary hearing on the issues raised in the petition was conducted (see Matter of Myles, 57 Misc 2d 101). The court redesignated the special guardian to protect the incompetent’s interests during the new special proceeding. Judicial notice of the prior proceeding was taken and oral testimony was heard. Petitioners placed in evidence a schedule of the incompetent’s assets and *154 expenses and also placed in evidence a will executed by the incompetent on November 30, 1966.
The petition requests that an order be granted permitting annual gifts in the sum of $3,000 to the wife and three children of the marriage. At the hearing counsel for the petitioners modified the request to permit said gifts only for the year 1969. The petition states that these gifts will be used by the three minor issue (ages 13, 17, 18) to defray their schooling; and that the gift to petitioner Veronica Turner will be used to defray household expenses. The petition further states that said gifts are not subject to the Federal gift tax (Internal Revenue Code, § 2503, subd. [b]; U. S. Code, tit. 26, § 2503, subd. [b]) and will reduce the Federal estate tax imposed upon respondent’s estate when he dies.
The testimony and documentary evidence offered at the hearing related to the desirability of making such gifts so as to reduce the Federal estate tax impact. Furthermore, the financial schedule offered by petitioners indicates that, of respondent’s annual expenses in the sum of $28,643, a portion has been allocated to school tuitions and allowances and ordinary household expenses. Accordingly, the court views the applicátion as one for gifts for one year so as to reduce Federal estate taxes.
While it is well settled that the Supreme Court may direct the committee of the incompetent to make payments out of income or principal to the incompetent’s family and collateral relatives for support (Matter of Flagler, 248 N. Y. 415; Matter of McKitterick, 5 A D 2d 784; Matter of Grace, 2 A D 2d 222, affd. 2 N Y 2d 822; Matter of Farmers’ Loan & Trust Co., 181 App. Div. 642, affd. 225 N. Y. 666; Matter of Battin, 171 Misc. 145; Mental Hygiene Law, § 100; 17 Carmody-Wait 2d New York Practice, Committee For An Incompetent, §§ 109:109-110; 27 N. Y. Jur., Incompetent Persons, § 75; 44 C. J. S., Insane Persons, § 90), the instant matter concerns “the power of the court to grant or authorize noncharitable gifts or allowances out of the estate of an incompetent, not for the purpose of aiding needy relatives, but solely to obtain a reduction of his taxable estate and a consequent increase in the amount available for the ultimate distributees ” (Ann. 24 ALR 3d 863, 901, Guardian-Noncharitable Gifts). It should be noted that in cases involving allowances to collateral relatives the courts have held that such applications should be discouraged and not be granted in the absence of special circumstances (Matter of Schley, 201 Misc. 522, affd. 279 App. Div. 1084; Matter of Bond, 198 Misc. 256; Matter of Fleming, 173 Misc. 851; see 54 Harv. L. Rev. 143 [1940]). Similar reasoning *155 would appear to be appropriate whenever the incompetent’s estate is subject to depletion.
Nevertheless, the courts in applying the “doctrine of substituted judgment ’’may order payments from the incompetent’s estate on finding that the incompetent, if sane, would have made such payments (see Matter of Myles, 57 Misc 2d 101, supra; Matter of Flagler, 248 N. Y. 415, supra; Matter of Farmers’ Loan & Trust Co., 181 App. Div. 642, affd. 225 N. Y. 666, supra; Ann. 24 ALR 3d, at p. 869). In Matter of Hills (264 N. Y. 349, 353-354), the Court of Appeals aptly set forth the governing principle: “ a court of equity, through its general jurisdiction over fiduciaries and its function of guardianship of incompetents, may, in a proper case, direct the committee to act in behalf of the incompetent in accordance with what the court finds would, in all probability, have been the choice of the incompetent if he had been of sound mind.”
While there is little authority in point (see Matter of Myles, supra), the factors deemed determinative in the cases discussing the gift versus estate tax problem are: (1) the extent of the incompetent’s estate, (2) medical testimony: (i) regarding the permanency of the incompetent’s illness and his chances of recovery, (ii) concerning the needs of the incompetent for the balance of his illness, (iii) relating to the life expectancy of the incompetent; (3) the gift-giving disposition of the incompetent prior to his illness, (4) the testamentary scheme provided by the incompetent, and (5) the tax consequences of the gifts (Matter of Myles, supra; Matter of Carson, 39 Misc 2d 544; Matter of Guardianship of Christiansen, 248 Cal. App. 2d 398; Matter of DuPont, 41 Del. Ch. 300; Matter of Guardianship of Neal, 406 S. W. 2d 496 [Tex. Civ. App.]; Ann. 24 ALR 3d, pp. 901-904). Furthermore, at least one court in this State has permitted a gift to be made to a next of kin solely on the ground that tax advantages would accrue to the estate of the incompetent (Matter of Carson, supra). However, in Carson the court revoked its prior authorization of a gift made to the incompetent’s daughter because the will postponed payment of principal until she reached 40 years of age. Consequently, it has been said that “ the court will give great heed, among* other circumstances, in making a ‘ substituted judgment ’ decision to the testamentary desire of the incompetent” (Matter of Myles, 57 Misc 2d, at p. 102).
I shall now discuss the evidence adduced at the hearing in relation to the factors previously mentioned as bearing upon applications for gifts. First, it was established that the present value of the incompetent’s.estate is approximately $300,000 *156 exclusive of life insurance policies which, incidentally, if the incompetent has retained ‘ ‘ incidents of ownership ’ ’, may be included in his gross estate for Federal estate tax purposes (internal Revenue Code, § 2042). The annual expenses from the estate for the benefit of the incompetent and his family are $28,643, plus an additional $12,000 yearly to maintain the incompetent in a nursing home. Since the annual income is approximately $24,000, it is patent that there is an annual invasion from principal in excess of $16,000. The medical testimony proffered by Dr. Handel, a neurosurgeon, established that the incompetent, who is 66 years of age, has virtually no chance of recovering from his illness which is of an organic nature. However, on the other hand, Dr. Handel’s testimony concerning the incompetent’s life expectancy was inconclusive. As to the incompetent’s gift-giving disposition while he did not labor under a mental disability, it appears that over an indeterminate period of time he created several trust savings accounts for each of his daughters and also gave sums of money to his wife for household expenses. Furthermore, the financial statement submitted by petitioners indicates that Hrs. Turner herself owns approximately $62,000 in mutual funds. The testamentary scheme of the incompetent in its simplest restructuring is as follows: one half of his gross estate goes to the wife if she survives the incompetent, the residuary is placed in a trust with income to the wife for life and upon her death the residuary is to be divided into three trusts for the surviving children with income payable to them until they reach age 25 in which event one half of the principal of each trust is to be distributed and the remaining corpus shall be distributed when each child reaches age 30. The trustee of the children’s trusts has power to invade the corpus for the “ support, education and maintenance ’ ’ of the beneficiaries. Consequently, as to the children it is clear that the incompetent intended to postpone distribution of one half his estate until, at the earliest, each child reached age 25. This factor alone may be decisive in denying the application herein (Matter of Carson, 39 Misc 2d 544, supra; Matter of Myles, 57 Misc 2d 101, supra). As to tax consequences, it was indicated earlier that the gifts herein will not result in a Federal gift tax, but unless the incompetent survives in excess of three years after payment by the committee pursuant to court order, the total amount given within the three-year period may still be subject to the Federal estate tax (City Bank Co. v. McGowan, 323 U. S. 594; Internal Revenue Code, § 2035). In that case the purported reason for malring the gifts falls by the wayside. Nevertheless, the special *157 guardian stated that should the incompetent survive for a period of seven years, and if gifts are made each year, the estate tax (figured at present rates) would be reduced by approximately $1,000 per year. Of course, as the will itself indicates, the wife must survive the incompetent to obtain her share of the estate, and the marital deduction (Internal Revenue Code, § 2056) comes into play only in the event of such survivorship.
While the court does not subscribe to the view that tax avoidance is not a sufficient legal ground for the distribution of an incompetent’s estate while he is actually alive (cf. Matter of Bullock, 10 Pa. D. & C. 2d 682) or that it lacks the power to authorize the allowances requested (Matter of Guardianship of Neal, 406 S. W. 2d 496, supra; cf. Mental Hygiene Law, §§ 100; 106, subd. [1]), it is of the opinion that, under the circumstances here, where the principal of the estate will be depleted at a rate of approximately 5% annually and the incompetent has evinced an intention not to distribute any portion of the estate to his children until, at the earliest, they each reach 25 years of age, the application must be denied. Petitioners have failed to establish by a fair preponderance of the evidence that the incompetent, were he prudent and of sound mind, would make these gifts, despite the tax advantages to the ultimate beneficiaries.
The determination is without prejudice to any application made during the lifetime of the incompetent pursuant to article 5-A of the Mental Hygiene Law.