entered in favor of defendants declaring resolution valid and lawful.

In the Matter of the Estate of HELEN C. FAIRBAIRN, Deceased. ANN C. WHITTLESEY et al., Respondents-Appellant; LIBERTY NATIONAL BANK AND TRUST COMPANY, as Committee, Appellant-Respondent.

Fourth Department, February 25, 1977

*Albrecht, Maguire, Heffern & Gregg (Richard T. Sullivan* of counsel), for appellant-respondent.

*Garvey, Magner, Sullivan & Love (Philip H. Magner* of counsel), for respondents-appellants.

WITMER, J. The principal questions presented on this appeal are whether the court should exercise its judgment in lieu of that of the incompetent in favor of the petitioners, her two needy sisters, to grant financial assistance to them, and if so, in what manner and to what extent.

In 1968 Helen C. Fairbairn was adjudicated an incompetent person, and appellant Liberty National Bank and Trust Company was appointed committee to manage her estate, then valued at three quarters of a million dollars, including antiques and personal effects. The evidence establishes that Helen is without any possibility of recovering her competency. In 1975 petitioners, relying upon the doctrine of "substitution of judgment", petitioned the court to direct the committee of their sister's estate to pay to each of them the sum of $200,000 as *inter vivos* gifts, which, they allege, presumably the incompetent would give to them if she were competent. As of the date of trial in December, 1975, the incompetent was 81 years old with a life expectancy of 7 years. Her sisters Ann and Mary, the petitioners, are 75 and 70 years old respectively, the latter in poor health and presently in a hospital under treatment for cancer. There is evidence that prior to the declaration of Helen's incompetency a close personal sister relationship existed between her and petitioners, and she made gifts to assist them. In 1967, prior to her incompetency, Helen executed a power of attorney in favor of her sister Ann, one of the petitioners. In the course of performing her duties under that power of attorney, Ann found a copy of a will executed by the incompetent on March 17, 1966, in which Ann was named coexecutrix and she and Mary were named as the residuary legatees. No question is raised as to the competency of the incompetent in 1966 and 1967 when the above documents were executed.

During the seven years in which respondent bank had served as committee of the incompetent's estate at the time of trial, the assets thereof had fluctuated in value between approximately $700,000 and $900,000. The bank filed annual

informal accounts of the estate, showing a modest income of a little over $20,000 annually. The expenses of caring for the incompetent amounted to between $10,000 and $12,500 annually. Thus, it has not been necessary to invade the corpus to maintain the incompetent; and in fact the committee has accumulated about $64,000 of unexpended earnings.

In order to demonstrate to the court that the estate could well afford to distribute $400,000 to petitioners and still comfortably maintain the incompetent, upon the trial petitioners offered evidence that under proper management the estate would earn between $75,000 and $85,000 per year; and evidence was adduced that various assets of the estate were not yielding income. Since the proceeding was not an accounting nor one to surcharge the committee, the latter objected to the introduction of this evidence; but the court ruled that it was relevant to the issue of the sufficiency of the estate to furnish ample support to the incompetent and yet make the requested distributions to petitioners. The ruling was correct. The committee countered such evidence by witnesses who testified that its management of the estate was proper and the income yield therefrom was within normal limits.

Although the propriety of the committee's management of the estate was only tangentially presented, the evidence of improper and inadequate management of the estate was such that the court, in its capacity as overseer of the affairs of incompetents, cannot ignore it. Without prejudging the matter, the court is compelled to require the institution of an intermediate accounting by the committee, wherein the propriety of its conduct of the affairs of the estate may be adjudicated. The trial court should, therefore, be directed to require the committee to proceed forthwith to render an intermediate accounting of its conduct of the affairs of the incompetent since its appointment (see 18 Carmody-Wait 2d, NY Prac, § 109:142; *Matter of Norris,* 266 App Div 882; CPLR 1201 and 1202, subd [a]).

Upon the trial much reliance was placed by petitioners upon the alleged existence of a will made by the incompetent in which petitioner Ann C. Whittlesey is named coexecutrix and the two petitioners are named as the residuary legatees. They argued that since the incompetent will never be able to change her will and is over 80 years of age, the bulk of the estate will soon be theirs, and that the court should consider that fact in determining whether to invoke the doctrine of

"substitution of judgment" in this case. The committee objected to the introduction into evidence of the incompetent's will to support petitioners' above contention. It asserted that the will, drawn by the incompetent's attorneys (who now represent the committee), is a confidential document and that no one but the incompetent can waive the privilege of its confidentiality in her lifetime, and that her inability to waive it bars consideration of the will by the court.

The committee's officers testified that they had conferred about the will with petitioner Ann Whittlesey, who had the power of attorney for the incompetent and was nominated coexecutrix of the will, and with their attorneys who had drawn the will for the incompetent, and that they had been advised of the terms of the will and had been guided thereby in the committee's administration of the estate. Based upon that testimony and faced with the issue of the incompetent's probable wishes in these circumstances, the court received the will into evidence as indicative of the incompetent's regard for the petitioners and her intentions at the date of the will, March 17, 1966.

A committee functions as agent of the court (*Matter of Hills,* 264 NY 349, 353-355; *Carter v Beckwith,* 128 NY 312, 316; *Matter of Norris,* 266 App Div 882, 883, *supra;* 17 Carmody-Wait 2d, NY Prac, § 109:86). Since the court had before it the question of the incompetent's probable intent under the circumstances, it was proper for it, in effect, to have the committee, in behalf of the incompetent, waive the privilege of confidentiality of her will with respect to the issue before the court. The evidence shows that in fact all of the parties were cognizant of the terms of the will, and the committee was asserting the privilege to bar the court's consideration of the will in connection with the central issue in this case. We approve of the court's ruling in receiving the will into evidence.

The record shows that Ann and Mary lived in an apartment in the City of Buffalo which when they moved in some years ago was in good condition and in a good section of the city; that since then the area has deteriorated very much, and now it is dangerous to walk on the streets in the neighborhood, especially in the evening; the apartment is poorly maintained, and it is not a good place for petitioners to live. Their financial condition is such, however, that they cannot afford to move to better accommodations; and indeed, they are now in

very poor circumstances. In view of their ages and need, the age and condition of the incompetent and the fact that they are the potential owners of the substantial assets of the incompetent, this proceeding was instituted to enable them to enjoy some of the benefits of the incompetent's estate while they are able to do so.

In a case of this sort the court may direct the committee of an incompetent to take such action as the court finds to be the probable desire of the incompetent under the circumstances, including the need of the petitioners *(Empire Trust Co. v Fell,* 271 NY 72, 75). The trial court held herein that petitioners established that if the incompetent were sane she would make some gift of her assets to them to assist them in their present need; and with this determination we agree *(Matter of Flagler,* 248 NY 415, 418-420; *Matter of Farmers' Loan & Trust Co.,* 181 App Div 642, 646-647, affd 225 NY 666; cf. *Matter of Turner v Turner,* 61 Misc 2d 153, 155; *Matter of Kernochan,* 84 Misc 565, 569-572).

Based upon that finding the trial court directed that the personal assets and antiques of the incompetent, valued at $39,393, be removed from storage and be distributed in kind to petitioners or sold and the proceeds distributed to them equally. The execution of this directive will relieve the estate of the expense of preserving such items and will aid petitioners as the incompetent presumably would wish to do and we affirm that aspect of the judgment.

Petitioners alleged and gave evidence to establish that they each need $12,000 annually in order to live in accordance with their former modest style; and to that end they each requested that $200,000 be distributed to them now from the incompetent's estate. Taking into account the size and earnings, present and potential, of the incompetent's estate and petitioners' needs, the trial court directed that $75,000 be distributed to each of the petitioners at this time in addition to the distribution of the personal effects or the proceeds thereof above mentioned. Although we find no serious defect in that determination, we vacate it for what we deem a better disposition.

In applying the doctrine of "substitution of judgment" the court has a primary duty of protecting the estate of the incompetent both for her own needs in her lifetime and to the end that at her death her estate will devolve substantially as she intended, when sane. Only the special intervening needs

of persons close to her, whom she may be found to want to assist, may be permitted to invade the estate and reduce the corpus.

When the doctrine of "substitution of judgment" originated, there were no gift or inheritance taxes, and so the courts were not asked to consider the tax advantages to an incompetent's estate of a distribution in her lifetime to the presumptive distributees. With the advent of such taxes they were often treated as a factor in decisions made by the courts as to whether a distribution should be made and the manner thereof (see *Matter of Turner v Turner,* 61 Misc 2d 153, 155, *supra; Matter of Myles,* 57 Misc 2d 101; *Matter of Carson,* 39 Misc 2d 544, 545-547; *Matter of Christiansen,* 248 Cal App 2d 398, 424; *Matter of duPont,* 41 Del Ch 300, 315). That argument was urged upon the trial court herein. Since January 1, 1977, however, the new Federal tax law (see 26 US Code, § 2001 *et seq.* as added to and amd by Public Law 94-455, 90 US Stat 1846-1849) equalizes taxes in *inter vivos* gifts and testamentary bequests, and the substantial advantage, tax-wise, formerly gained by an *inter vivos* distribution no longer exists. To this extent there has been a change of circumstances since the judgment was entered in this case.

There are reasons which militate against large lump-sum distributions at this time to these petitioners. Petitioners are not accustomed to manage such large sums. If they receive these funds presently without limitation, they may be the victims of persons who would like to help them invest or use them, or petitioners may improvidently dissipate the funds; so that soon they could again be in as great need as they are today. Moreover, there is no assurance that petitioners will survive the incompetent. One of them is now quite ill in a hospital. In the event of the early death of a petitioner, the distributed assets would then pass through the estate of that distributee in accordance with her will, instead of in accordance with the will of the incompetent. The court should try to avoid such a consequence.

We conclude, therefore, that the best way to aid petitioners in a manner most likely to accord with the incompetent's probable intent if she were sane, is for the committee to pay to each of them out of the income, and out of the principal insofar as is necessary, the sum of $1,000 monthly. In so doing, petitioners will be receiving exactly what they testified that they need and desire, to wit, $12,000 per year, and there

will be a minimum of invasion of the incompetent's estate at this time. We believe that this is the preferred manner of making such distributions in this case (see *Matter of McKitterick,* 5 AD2d 784; *Matter of Schley,* 201 Misc 522; *Matter of Bond,* 198 Misc 256, 258; *Matter of Fleming,* 173 Misc 851, 853-854).

The amended order and judgment, therefore, should be modified to provide that in lieu of the lump-sum distribution of $75,000 to each petitioner, the sum of $1,000 shall be paid to each of them monthly, with the proviso that in the event of a change in conditions any party hereto may apply to the court for a review and reconsideration of the needs of the parties and the condition of the incompetent's estate. Except as so modified, the amended order and judgment should be affirmed. Petitioners may apply at Special Term for counsel fees and necessary disbursements.

MARSH, P. J., MOULE, CARDAMONE and GOLDMAN, JJ., concur.

Judgment and amended order unanimously modified on the law and facts in accordance with opinion by WITMER, J., and as modified affirmed with costs to petitioners.