ESTATE OF SAMUEL A. DREYER, DECEASED, ROBERT A. DREYER AND EDWARD L. DREYER, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9811–74.   Filed May 31, 1977.

*Harold D. Klipstein* and *Robert A. Dreyer* (executor), for the petitioner.
*Peter W. Mettler,* for the respondent.

SCOTT, *Judge*: Respondent determined a deficiency in estate tax in the amount of $8,603.58. The issue for decision is whether there should be included in the gross estate of decedent Samuel A. Dreyer the value of the residuary estate of his spouse who predeceased him. The resolution of this issue depends upon whether a document executed by the executors of the Estate of Samuel A. Dreyer renouncing that decedent's interest in the estate of Annette S. Dreyer is valid for the purpose of determining estate tax liabilities.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Robert A. Dreyer and Edward L. Dreyer, the executors under the will of Samuel A. Dreyer (hereinafter referred to as decedent), resided in Short Hills, N.J., at the time of the filing of the petition in this case. The executors filed a United States estate tax return for decedent's estate with the Andover Service Center of the Internal Revenue Service at Andover, Mass., on March 3, 1972. Decedent died on December 6, 1970.

Decedent was born on November 19, 1889, and he and Annette Dreyer were married on June 1, 1915. Decedent and his wife had two sons, Robert, born in 1916, and Edward, born in 1918, who are the executors of the estate. In March 1966 decedent was admitted to the Northfield Manor Nursing Home, West Orange, N.J. At the time decedent was admitted to the nursing home his physical condition was such that his two sons handled most of his business affairs. His wife signed checks drawn on the joint account she had with decedent on the advice of her sons. Robert Dreyer is an attorney who was admitted to practice in the State of New York in 1940 and in the State of New Jersey in 1947. Edward Dreyer is the president and principal stockholder of a company engaged in

the manufacture of cemented carbides, which company has a net worth of approximately $4 million. Decedent owned income-producing property in Pelham, N.Y., which was managed for him by his' sons.

On March 7, 1968, Annette Dreyer died a resident of Westchester, N.Y., survived by decedent and their sons, Robert and Edward. On May 2, 1968, Annette Dreyer's will, dated January 9, 1963, was admitted to probate by decree of the Surrogate's Court, County of Westchester, State of New York, and letters testamentary were issued to Robert and Edward Dreyer, the executors named in her will. In connection with the probate of the will of Annette Dreyer, the Surrogate's Court, County of Westchester, on April 19, 1968, appointed a guardian ad litem for decedent. At that time decedent was incompetent and confined to a nursing home. He remained incompetent and at the nursing home at all times thereafter until his death. The first nine articles of Annette Dreyer's will provided for payment of her debts and for legacies for various named individuals. The tenth article of her will disposed of her residual estate as follows:

TENTH: All the rest, residue and remainder of my estate, both real and personal, and wheresoever the same may be situate, I give, devise and bequeath unto my husband, SAMUEL A. DREYER, absolutely. In the event that the said SAMUEL A. DREYER shall predecease me or die in a common accident with me, then and in such event, all the rest, residue and remainder of my estate, I give, devise and bequeath unto my sons, ROBERT AND EDWARD DREYER, share and share alike.

From the time decedent entered the nursing home his life expectancy was short and it would have been expected that he would predecease his wife. At the time of his wife's death, decedent owned assets of a value in excess of $150,000. Shortly after the death of Annette Dreyer, Robert Dreyer consulted an attorney whom he had known since 1946 when he became an associate in that lawyer's law firm. Robert Dreyer considered that attorney an authority in the area of will drafting, estate planning, and estate administration, and that attorney had advised both Robert and Edward Dreyer concerning their own individual estate plans and was familiar with their financial circumstances. This attorney advised Robert and Edward Dreyer to apply to the Supreme Court,

Westchester County, to have Edward Dreyer appointed committee for decedent's property.

Decedent had been a resident of Westchester County, N.Y., for more than 50 years and continued to be a resident of that county until his death. On May 28, 1968, Edward Dreyer verified a petition for his appointment as decedent's committee. The petition was supported by the affidavits of a medical doctor who practiced as a psychiatrist in White Plains, N.Y., and a medical doctor who was an internist in Short Hills, N.J. The petition alleged that decedent, by reason of mental illness, was incompetent to manage himself and his affairs, described his assets, and requested that, because of decedent's mental and physical condition, service on him be dispensed with. Robert Dreyer joined in the petition and his consent to the granting of the petition was annexed to the petition. The affidavits of the psychiatrist and the internist in effect stated that decedent was virtually unable to move, could not respond to questions, could not read or communicate, could not care for his own physical needs, and was totally incompetent to care for his property or manage his affairs. The affidavits further stated that there was no hope that his condition would improve.

In the proceeding for appointment of Edward Dreyer as decedent's committee, a guardian ad litem was appointed by the court to protect decedent's interests. This guardian ad litem sought access to decedent's medical records at the Northfield Manor Nursing Home, but the nursing home would not release the information to him without the authorization of decedent. Shortly before the trial with respect to the petition, Robert Dreyer made arrangements to procure the release of the information by agreeing to personally indemnify the nursing home against liability resulting from the disclosure. The incompetency proceeding was tried by a jury on June 11, 1968, in White Plains, N.Y. Robert and Edward Dreyer testified in the proceeding and a doctor who had examined decedent in the nursing home also testified. The guardian ad litem appointed by the court did not oppose the application. The jury found that decedent was incompetent to manage himself or his affairs by reason of cerebral arteriosclerosis and the court granted Edward Dreyer's petition and appointed him committee of decedent.

The order appointing Edward Dreyer, filed June 12, 1968, required the committee to pay out of the incompetent's funds $750 for the services of the guardian ad litem and $1,540 for other legal services and disbursements in the proceeding, and required Edward Dreyer to post a bond in the sum of $131,000.

On May 28, 1968, the lawyer who handled the proceeding to have Edward Dreyer appointed committee for decedent sent Robert Dreyer a copy of an opinion of the Supreme Court, Westchester County, with respect to permission being sought by children of an incompetent to make inter vivos gifts to themselves from the incompetent's estate for the purpose of avoiding unnecessary estate or inheritance taxes. The lawyer attached a note to the opinion stating that after Edward Dreyer had been appointed committee consideration could be given to whether the opinion could be applied in decedent's case. Robert and Edward Dreyer discussed with this lawyer the advisability of pursuing an application in the Supreme Court, Westchester County, by Edward as committee of decedent for leave to renounce decedent's interest in his wife's estate.

From the time of the death of Annette Dreyer until decedent's death, decedent was being supported by his two sons, Edward and Robert. They paid all his medical and other bills with their own funds. A number of times following the death of Annette Dreyer, Robert Dreyer discussed with his lawyer the legal and nonlegal considerations involved in an application by the committee for leave to renounce decedent's interest in his wife's estate. Both Robert and Edward Dreyer and the lawyer had copies of decedent's will and knew the provisions of that will. While neither Robert Dreyer nor the lawyer knew of a case in New York dealing directly with the question of renunciation of a testamentary bequest by the committee of an incompetent, they were of the opinion, because of the holding in the case the lawyer had sent to Robert Dreyer with respect to the making of gifts by an incompetent, that proof in the form of testimony would be required to establish that ample provision had been made for the likely expenses of the incompetent during his lifetime as well as medical evidence of the condition of the incompetent and his life expectancy. Robert Dreyer and the attorney were

of the opinion that medical testimony of the same type which had been presented in the proceeding for the appointment of a committee would be required to support an application for renunciation by the incompetent of a testamentary bequest. Both Robert Dreyer and the attorney were further of the opinion that the court would appoint a guardian ad litem in the proceeding and that the expenses of such a proceeding would be in excess of $2,000. Furthermore, the attorney advised Robert and Edward Dreyer that he could not predict the result of an application to renounce the testamentary bequest by the committee if such application were filed. In addition, the attorney as well as Robert and Edward Dreyer felt that Robert and Edward might be put in a "ghoulish position" of trying to expedite the passage of their father's property to themselves.

On November 10, 1968, Robert Dreyer wrote a letter to his cousin who was the attorney who had probated Annette Dreyer's will, stating that the filing of Annette Dreyer's New York estate tax return should be deferred and that—

We are studying the possibility (for which there is precedent) of obtaining a court order authorizing Edward, as Dad's Committee, to renounce Dad's residuary interest in Mother's estate. The family unit would profit thereby, despite the partial loss of the marital deduction on Mother's estate tax return.

The attorney who Robert and Edward Dreyer were consulting wrote a letter dated February 14, 1969, to Robert, attaching a copy of a proposed petition he had prepared which might be filed in applying to the Supreme Court, Westchester County, for decedent's committee to renounce decedent's interest in his wife's estate. This letter stated in pertinent part:

The basic problem in the annexed papers is that there is a possibility that if your father makes the renunciation, and lives five years, all he will have left is the surrender value of some insurance policies.

Although the opinion of the doctor is that your father will live less than two years, if the doctor is wrong, the Court may feel that your father will be in financial trouble. That is the possible difficulty with the application.

The draft of the petition stated in pertinent part as follows:

The petition of EDWARD L. DREYER respectfully states:

1. I reside at * * * Short Hills, New Jersey. I am a son of Samuel A. Dreyer and the late Annette S. Dreyer. My mother died on March 7, 1968.

In a prior proceeding (File No. 6054/1968) by order of this Court made June 11, 1968 and entered June 12, 1968, my father was adjudicated incompetent and I was appointed Committee of his person and property pursuant to Section 102 of the Mental Hygiene Law. In that proceeding, the Hon. Joseph A. Lichtenthal was appointed guardian ad litem to represent the incompetent.

2. My father is 78 years of age, having been born on November 19, 1889. When my father became incompetent, by reason of cerebral arteriosclerosis, to manage himself or his affairs, he and my mother resided in the County of Westchester, State of New York, at * * *, in the Village and Town of Pelham. My father now is, and since March, 1966, has been, a patient at Northfield Manor Nursing Home, * * *, West Orange, New Jersey.

## NATURE OF THE PROCEEDING

3. This is a proceeding by the petitioner, as Committee of the above named incompetent, for permission to renounce the testamentary disposition of the residuary estate of the late wife of the incompetent, Annette S. Dreyer, who died on March 7, 1968, and any intestate distribution to him resulting from such renunciation. The value of the said residuary estate is estimated at $21,420.

## THE GROUNDS FOR THE APPLICATION

4. The sole reason for the requested order is to reduce the burden of Federal and New York estate taxes, that will be imposed upon the death of the incompetent. The grounds for the said application are those stated by this Court in *Matter of Myles,* 57 Misc. 2d 101, 291 N.Y.S. 2d 71–72:

"The basic principle advanced on behalf of petitioner in commending this course of action to this Court, is that this Court has the power and authority to determine 'whether to authorize transfer of property of the incompetent for the purpose of avoiding unnecessary estate or inheritance taxes or expenses of administration and to authorize such actions where it appears from all of the circumstances that the ward, if same [sic], as a reasonably prudent man, would so plan his estate, there being no substantial evidence to the contrary.' (*In re Guardianship of Christiansen,* 248 Cal. App. 2d 398, 56 Cal. Rptr. 505, 522.) The Christiansen case is a well reasoned and documented review of the applicable law and expounds the 'substituted judgment' rule; i.e., that the Court would upon available evidence substitute its judgment for that of the incompetent."

To demonstrate that this application meets the principle stated above by this Court, the petitioner will hereinafter consider the following:

(a) The possible estate tax saving;

(b) The likelihood that the incompetent would wish to achieve the estate tax saving resulting from the proposed renunciation;

(c) The likelihood that there will be no prejudice to the welfare of the incompetent.

## THE POSSIBLE ESTATE TAX SAVINGS

5. * * * If the incompetent should renounce his interest in the residuary estate of his late wife, valued as heretofore noted at $21,420, there will be a

total saving of Federal and New York estate taxes in excess of 30% of the said sum of $21,420 or approximately $6,400.

## THE LIKELIHOOD THAT THE INCOMPETENT WOULD WISH TO ACHIEVE THE ESTATE TAX SAVING BY THE PROPOSED RENUNCIATION

6. In essence, the family testamentary provisions are as follows: The incompetent's Will, dated November 3, 1960, a copy of which is annexed hereto and marked Exhibit C, and a First Codicil thereto dated December 10, 1961, a copy of which is annexed hereto and marked Exhibit D, provide that, should his wife not survive him, the residuary estate is given to your petitioner and his brother, Robert, or our respective issue should we not survive the incompetent * * *

Your petitioner's mother's Will dated January 9, 1963, a copy of which is annexed hereto and marked Exhibit E, gave the residuary estate to your petitioner's father and should he not survive her, to your petitioner and your petitioner's brother, Robert.

Thus, it could be fairly said that your petitioner's parents wished their residuary estate to go to your petitioner and his brother, Robert, with the exception of the aforesaid pre-residuary gifts under the Will of the incompetent, amounting to $38,376.73.

## THE LIKELIHOOD THAT THERE WILL BE NO PREJUDICE TO THE WELFARE OF THE INCOMPETENT

7. The annual cost of maintaining the incompetent in the aforesaid Northfield Manor Nursing Home plus incidental expenses is $22,000. Both your petitioner and his brother have been quite anxious that our parents preserve whatever estate they had, as long as they lived, so that they would have an adequate reserve for their future support. Therefore, either your petitioner or his brother have been paying all the annual charges at the Northfield Manor Nursing Home. However, this application is *not* deemed to be a representation that they will continue to do so, in view of the changed circumstances of the death of your petitioner's mother and the short life expectancy of the incompetent. Annexed hereto is the affidavit of Dr. * * *, from which it appears that it is highly unlikely that the incompetent will live for more than two years.

8. Exhibit A, heretofore mentioned, shows assets of $145,842.76 and income of $12,329.75 annually. Should there be a renunciation of the incompetent's interest, as a residuary beneficiary under the Will of his late wife, then the assets will be reduced by the sum of $21,420 to $124,422.76 and the income will be reduced by $835.74 to $11,493.98 annually.

Neither this petition nor any petition by the committee for decedent to renounce decedent's interest in the estate of Annette Dreyer was filed in the Supreme Court, Westchester County.

As committee for decedent, Edward Dreyer maintained Blue Cross-Blue Shield and major medical coverage for decedent. Decedent was also covered by Medicare.

Robert and Edward Dreyer decided to keep Annette Dreyer's estate open so that when it was feasible the renunciation of decedent's interest could be effected and Annette Dreyer's New York State tax fixed, with the computation of the marital deduction in her estate being based on the renunciation. At the time of Annette Dreyer's death, the assets of her testamentary estate consisted of bank deposits, a State of Israel bond having a maturity value of $150, and 354 shares of Tri-Continental Corp. stock. By reason of stock dividends during the period of administration, there were 401 shares of Tri-Continental Corp. stock in Annette Dreyer's estate when it was wound up. The funds on deposit in banks were used to pay a legacy of $1,000 and to defray funeral and administration expenses. The balance of Annette Dreyer's estate was held intact until after decedent's death and no part of the estate was actually paid over to decedent or his committee.

On January 11, 1971, by decree of the Surrogate's Court, County of Westchester, State of New York, decedent's will and codicil were admitted to probate and letters testamentary issued to Robert and Edward Dreyer as executors. On January 20, 1971, Robert and Edward Dreyer, in their capacity as executors of decedent's estate, executed a document which, after reciting facts with respect to the death of Annette Dreyer, the probate of her will, the death on December 6, 1970, of decedent, and that his will was admitted to probate on January 11, 1971, stated:

Now, Therefore, we, Robert A. Dreyer and Edward Leo Dreyer, as executors of the estate of Samuel A. Dreyer, not having received or accepted all or any part of the testamentary share or intestate share of the estate of Annette S. Dreyer to which Samuel A. Dreyer was entitled, do hereby renounce all of such testamentary or intestate share of Samuel A. Dreyer in the estate of Annette S. Dreyer, deceased.

On April 2, 1971, Robert Dreyer verified a petition addressed to the Surrogate's Court, Westchester County, requesting that the New York estate tax on the estate of

Annette Dreyer be fixed in the sum of $201.15. Schedule M attached to this petition stated as follows:

SCHEDULE M—TRANSFERS TO SURVIVING SPOUSE

| Schedule | Item | Amount |
|---|---|---|
| "E" | 1. Bank accounts and Bond.................... | $23,829.54 |
| | Residue of Estate pursuant to Paragraph "Tenth" of Will renounced (as well as intestate share) by Samuel A. Dreyer & property passed to decedent's sons Robert A. & Edward L. Dreyer. | |
| | Total................................................. | 23,829.54 |
| Marital deduction (one-half of Adjusted Gross Estate, or the total of Schedule M, whichever is less)............................................. | | 23,829.54 |

The New York gross estate reported on the return was $58,038.78. The New York adjusted gross estate reported was $53,886.94, which, when reduced by the transfers to surviving spouse of $23,829.54 and $4,151,84 of funeral and administration expenses and debts of decedent, left a New York taxable estate of $30,057.40.

Under date of April 20, 1971, the attorney for Robert and Edward Dreyer addressed a letter to the Department of Taxation and Finance, White Plains, N.Y., in regard to the estate of Annette Dreyer, deceased, stating that in response "to your letter dated April 15, 1971" two copies of the renunciation of the interest of the surviving spouse in Annette Dreyer's estate were enclosed. This letter called attention to the fact that no exemption was claimed for the interest in the residuary estate that would have passed to the husband but for the renunciation.

Under date of April 30, 1971, an attorney for the New York State Tax Commission addressed a letter regarding the estate of Annette Dreyer to the attorney for Robert and Edward Dreyer, stating as follows:

In connection with the renunciations of the Executors of the Estate of Samuel A. Dreyer in the estate of the above named decedent, your attention is invited to the decision of Surrogate Bennett in re Belle Weing, dec'd., which is published in the New York Law Journal on April 26, 1971 at page 20.

Your attention is particularly invited to the suggestion of Surrogate Bennett set forth in the next to last paragraph of the decision.

Accordingly, will you please forward to this office, in triplicate, an affidavit setting forth facts as suggested by Surrogate Bennett, and setting

forth that the renunciation was served upon the Court and all interested parties who would be affected as a result of the renunciations, date or dates of such service, and upon whom service was made in each incidence.

Upon receipt of the said affidavit, further consideration will be given to the claimed exemptions of the above named decedent's two sons.

Under date of June 1, 1971, the attorney for Robert and Edward Dreyer, in compliance with the request of the attorney for the New York State Tax Commission, forwarded copies of an affidavit of Robert Dreyer sworn to on May 27, 1971, to that attorney and asked to be advised if the affidavit was in compliance with the request so that a duplicate original could be filed in the Surrogate's Court, Westchester County. The affidavit of Robert Dreyer recited the facts with respect to the appointment of Edward Dreyer as a committee for decedent's estate and further stated that "it seemed to us that if our father were in full command of his faculties, he would renounce his interest (worth approximately $23,000) in the residuary estate of our mother for the following reasons." The reasons assigned were the age of decedent at the time of his wife's death and that by renouncing the legacy from his wife the property would pass directly to his two sons who were the only persons interested in the renunciation as decedent had no creditors. The affidavit further stated that the sole effect of the renunciation is to renounce a legacy which would only result in increasing the taxable estate of decedent.

After hearing, the New York estate tax on the estate of Annette Dreyer was fixed by the Surrogate's Court, Westchester County, at $201.15. On June 14, 1971, the attorney for Robert and Edward Dreyer sent the original of the document purporting to be a renunciation, dated January 20, 1971, to the clerk of the Surrogate's Court, White Plains, N.Y., in connection with Annette Dreyer's estate. The clerk of the Surrogate's Court did not accept the proposed renunciation for filing and returned it to the attorney. The clerk of the Surrogate's Court orally told the attorney for Robert and Edward Dreyer that the renunciation was not timely under the recently enacted law, that this law was not applicable to the estate of Annette Dreyer, and that in his opinion it was not necessary that a renunciation under the common law be

filed with the Surrogate's Court.[1] Robert and Edward Dreyer did not contest the refusal of the clerk to file the renunciation, since Robert Dreyer and his attorney were both of the opinion that it was unnecessary to file the original of the document executed as a renunciation with the Surrogate's Court. The attorney would not have forwarded the renunciation to the clerk of the Surrogate's Court for filing except that an attorney for the New York State Department of Taxation and Finance wrote to the attorney and told him that he should file the renunciation. It was the intention of Robert and Edward Dreyer as executors of the estate of Annette Dreyer to keep the estate open and make no distribution of the property until after the death of their father.

On March 3, 1971, Robert and Edward Dreyer, as executors of the estate of Annette Dreyer, made a distribution from the estate to themselves of $12,252.36 and on April 2, 1971, after the New York estate tax on the estate had been fixed, made a distribution of $8,351.39 to themselves which disposed of the estate except for an expected tax refund and amounts retained in the estate to pay final attorney's fees.

At the date of decedent's death, his gross estate, excluding the interest in his wife's estate, was valued at $197,285.38. His debts were $1,247.32, plus the claims of Robert and Edward Dreyer amounting to $2,523.62.

In the estate tax return the value of the residuary estate of Annette Dreyer was not included in decedent's gross estate. Respondent in his notice of deficiency increased decedent's gross estate by $23,474.89, with the explanation that "a marital bequest of $23,474.89 from the estate of Annette Dreyer is includable in the decedent's gross estate."

OPINION

The issue between the parties is the effectiveness of the document signed by Robert and Edward Dreyer as executors of decedent's estate on January 20, 1971, as a renouncement by decedent of his residuary interest in the estate of his deceased wife. Petitioner takes the position that, under the

---

[1] The uncontradicted testimony in the record is to this effect. However, it should be noted that sec. 3–3.10 of the New York Estates, Powers and Trusts Law was not effective until Nov. 3, 1971.

law of New York as it existed at the date of the death of Annette Dreyer and at the time of the execution of the document purporting to renounce decedent's interest in the estate of his deceased wife, (1) executors were qualified to renounce an interest of a decedent in a testate estate, (2) the method used by the executors of decedent's estate for renouncing his interest in his deceased wife's estate was valid, and (3) the renunciation was made within a reasonable time. Petitioner contends that, therefore, the renouncing of decedent's interest in the estate of Annette Dreyer operated to cause that interest to pass directly to Robert and Edward Dreyer and the value of that interest not to be includable in decedent's estate.

Respondent contends that, under the law of New York as it existed at the date of Annette Dreyer's death and the law applicable to the purported renunciation signed by the executors of decedent's estate, the executors could not properly renounce for a decedent. Respondent further contends that even if under the law here applicable executors could properly renounce as the personal representatives of decedent, the purported renunciation here was not valid both because it was not properly filed and because it was not made within a reasonable time. Respondent does not dispute petitioner's contention that if the renunciation by the executors of decedent's estate is valid and effective the residuary estate of Annette Dreyer is not includable in decedent's estate.

In *Estate of Hoenig v. Commissioner*, 66 T.C. 471 (1976), we held that under the law of New York as it existed prior to November 3, 1971, the effective date of section 3–3.10, N.Y. Est., Powers & Trusts Law (McKinney Supp, 1975), an executor of a decedent had authority to renounce on behalf of that decedent a testamentary interest in an estate of a person who predeceased that decedent. In support of that position, we cited *In Re Klosk's Estate*, 169 N.Y.L.J. 21 (Feb. 14, 1973). In the *Hoenig* case we recognized that under the holding in *Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967), we were not bound to follow the decision in the *Klosk* case since that decision was of a Surrogate's Court rather than the highest court of the State of New York. Nevertheless, in the *Hoenig* case we concluded the holding in the *Klosk* case was the law

of the State of New York. Respondent here argues that our holding in *Estate of Hoenig* was incorrect and asks us to reconsider that holding, particularly in the light of the factual differences in the *Hoenig* case and the instant case. As respondent states, the facts in the *Hoenig* case and the instant case are dissimilar. However, the pure legal question of whether there exists in an executor authority to renounce on behalf of a decedent a testamentary interest in an estate of a person who predeceased him is not changed by factual differences. We have, however, further considered the issue in light of the facts here present and again arrive at the conclusion we reached in the *Hoenig* case with respect to the power of an executor under New York law to renounce.

Prior to the time of the enactment of section 3–3.10 of the New York Estates, Powers and Trusts Law in 1971, there had for some years been in effect a provision for renunciation of an intestate share of an estate. This provision, section 4–1.3, originally enacted in 1964, effective as of June 1, 1965, provided for renunciation of an intestate share of an estate by the personal representative of a decedent.[2] Under the common law rule in New York, a person who was entitled to a distributive share of an intestate estate could not disclaim or renounce his inheritance, since title vested in him was automatic by law, regardless of his wishes. See *In Re Wolfe's Estate*, 85 N.Y.S. 949 (Sup. Ct. 1903), affd. per curiam 72 N.E. 1152 (1904); *Singer v. Levine*, 181 N.Y.S.2d 699 (Kings County Sup. Ct. 1958); *Crippen v. Spies*, 7 N.Y.S.2d 704 (Sup. Ct. 1938). Therefore, prior to the enactment of section 4–1.3 of the New York Estates, Powers and Trusts Law with respect to renunciation, no power to make such a renunciation existed and an attempted renunciation effectively amounted to a gift. See *Maxwell v. Commissioner*, 17 T.C. 1589 (1952), which involved an attempted renunciation of an interest in a decedent's estate under California law.

---

[2] Sec. 4–1.3(b), N.Y. Est., Powers & Trusts Law, provides as follows:

(b) A renunciation on behalf of an infant, incompetent or a decedent shall be made by the guardian of the property of such infant, the committee of such incompetent or the personal representative of such decedent. Such renunciation shall not be effective unless, prior thereto, the guardian, committee or personal representative has been authorized to renounce by the court having jurisdiction of the estate of the infant, incompetent or decedent.

However, under the common law rule in New York a beneficiary under a will was entitled to renounce his legacy or devise on the theory that the testamentary disposition constituted an offer which the beneficiary is free to reject. See *Oliver v. Wells*, 254 N.Y. 451, 173 N.E. 676 (1930); *Albany Hospital v. Hanson*, 214 N.Y. 435, 108 N.E. 812 (1915); *In Re Matthiessen's Will*, 23 N.Y.S.2d 802 (Orange County Surr. Ct. 1940); *In Re Johnston's Will*, 298 N.Y.S. 957 (Kings County Surr. Ct. 1937); cf. *Brown v. Routzahn*, 63 F.2d 914 (6th Cir. 1933). See also the discussion in *In Re Wilson's Estate*, 298 N.Y. 398, 83 N.E.2d 852, 854 (1949).

When in 1971 statutory provisions were made for renunciation of testamentary dispositions, the statute provided for renunciation by the personal representative of a decedent.[3] While the purpose of the new provision was primarily to remove the lack of certainty in the area of renunciation of devises, see *In Re Weinig's Estate*, 66 Misc.2d 216, 320 N.Y.S.2d 341 (Nassau County Surr. Ct. 1971), by providing the time and method of renouncing, the indication from the New York cases is that there was no change in the substantive rights of a devisee under a will to renounce. See *In Re Klosk's Estate, supra*. The provisions of section 3–3.10 of the New

---

[3] Sec. 3–3.10, N.Y. Est., Powers & Trusts Law, provides in part as follows:

(a) Any testamentary beneficiary, including a person whose interest is created or increased by the renunciation of another under this section, may renounce all or part of his interest. Such renunciation shall be in writing, signed and acknowledged by the person renouncing, and shall be filed in the surrogate's court having jurisdiction over the decedent's estate within one year after the will making the disposition to be renounced in whole or in part has been admitted to probate, or in the event such disposition is of a future estate, not later than one year after it becomes an estate in possession. Notice of such renunciation shall be served personally or in such manner as the surrogate may direct upon the fiduciary directed by the will to make the disposition to be renounced in whole or in part and by mail or in such manner as the surrogate may direct upon all persons whose interest in the estate may be increased by reason of such renunciation. The time to file and serve a renunciation may be extended, in the discretion of the surrogate, on a petition showing reasonable cause and on notice to such persons and in such manner as the surrogate may direct. The time limited in this section for filing and serving a renunciation is exclusive, and shall not be suspended or otherwise affected by any other provision of law.

(b) A renunciation on behalf of an infant, incompetent or a decedent shall be made by the guardian of the property of such infant, the committee of such incompetent or the personal representative of such decedent. Such renunciation shall not be effective unless, prior thereto, the guardian, committee or personal representative has been authorized to renounce by the court having jurisdiction of the estate of the infant, incompetent or decedent.

York Estates, Powers and Trusts Law as to who may renounce and the method of renouncing is substantially the same as the provisions of section 4–1.3 of that law with respect to renouncing an intestate interest. As was pointed out in *In Re Klosk's Estate,* 169 N.Y.L.J. 21 (Feb. 14, 1973), in considering both section 3–3.10 and section 4–1.3 of the New York Estates, Powers and Trusts Law, the Temporary Tax Commission on Modernization, Revision, and Simplification of the Law of Estates considered that under the law as it existed prior to the enactment of these statutes, an executor had the right to renounce for a deceased legatee. In the *Klosk* case, the court stated:

It has been previously noted that EPTL 3–3.10 was drawn in conformity with the procedure provided in EPTL 4–1.3 for the renunciation of an intestate share. The latter section also provides for renunciation by the personal representative of a decedent and in the report of the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates it is stated: "The courts have not treated the right to renounce as personal, and there is no evidence that this rule should be changed. The personal representative of a deceased legatee or distributee ought to be able to renounce on behalf of the estate." (3 Reports of the Commission on Estates 262).

Although the foregoing quotation is not supported by citation of authority, apparently the commission felt that the power of an estate representative to renounce a legacy was an accepted rule of law.

In 6 Page on Wills section 49.5 there appears the following: "Unless a contrary intention is indicated by the provisions of the will, the right of acceptance or renunciation is not ended by the death of the devisee or legatee who had such right. Such right may be exercised by his executor or administrator".

Based upon consideration of the background of the statutory law and the case law in New York, we conclude that under the law as it existed prior to the enactment of section 3–3.10, N.Y. Est., Powers & Trusts Law, an executor in New York had a common law right to renounce a decedent's testamentary interest in an estate.

Having considered that the executors of decedent's estate were persons authorized to renounce, we must consider whether the purported renunciation in the instant case was effective. In order to be effective the renunciation must have been proper in form and made within a reasonable time after the decedent's death and prior to any act which could properly be considered as a use or acceptance of the bequest

by the decedent. *In Re Wilson's Estate,* 298 N.Y. 398, 83 N.E.2d 852 (1949). During the period between the death of the person of whose will an individual is legatee and the time of renunciation of the legacy, the presumption is that the legacy will be accepted. *In Re Wilson's Estate, supra.* In fact, a legatee need never formally accept the legacy, but an affirmative act is necessary to rid himself of it. However, where the renunciation is within a reasonable time it relates back to the date of the death of the testator whose will made the devise. *In Re Wilson's Estate, supra.*

Respondent's first attack here is that the renunciation by the executors was not filed with the Surrogate's Court. However, prior to the enactment of section 3–3.10 of the New York Estates, Powers and Trusts Law there was no requirement that a renunciation be filed or even that it be in writing. *Albany Hospital v. Hanson, supra.*

In *In Re Klosk's Estate, supra,* the court stated in this respect:

> While the statute which has been controlling in estates of persons dying after the effective date of EPTL 3–3.10 provides for court authorization, this jurisdictional responsibility was not preexisting but was introduced into the law by this recent statute. In view of this, the court does not find that in the estate of Rose Klosk, where the statute is not controlling, there is imposed upon the court either a responsibility for determining the propriety of the renunciation or a requirement for ratification of the act of the executors in renouncing. The fact that the renunciation is not opposed by any party to the proceeding instituted in either estate relieves the court of any obligation to guide the executors or to assume their fiduciary duties.
>
> The effect of renunciation is that the trust remainder under the will of Louis Klosk is accelerated in the same manner as if his wife had predeceased him (Matter of Fordham, 285 N.Y. 384; Matter of Schloessinger, 70 Misc. 2d 206).

In the case of *In Re Weinig's Estate,* 66 Misc.2d 216, 320 N.Y.S.2d 341 (Nassau County Surr. Ct., Apr. 21, 1971), the court accepted a renunciation of a testamentary interest in the estate of a decedent mailed to the court on April 8, 1971. The renunciation was dated November 10, 1970, and the decedent's will had been probated on May 15, 1968. In its opinion, the court stated that there was then no statutory provision for renunciation of a testate share of an estate and then added (p. 342):

During the past few years, there have been bills filed with the Legislature, proposing certain procedure for the renunciation of a legacy. Until this question is resolved, the court deems it advisable to give some guidance to the members of the Bar as to what steps would be advisable in renouncing a testamentary legacy. *This court will accept for filing any renunciation of a legacy but it is to the legatee's benefit that he take additional steps to make the renunciation more effective.*

It is suggested that, when a renunciation of a legacy is sought, the instrument should be in writing, served upon the court, the fiduciary and all the interested parties who would be affected as a result of the renunciation. In addition, an affidavit should be submitted, especially where a long period of time has elapsed from the date the will was probated to the date of the renunciation, setting forth the facts and circumstances which would justify the legatee's right to renounce the legacy and indicate whether there were any actions on the part of the legatee which might manifest the acceptance of the legacy. The affidavit should set forth the reason for the long delay in making the renunciation and whether the renunciation will affect any of the legatee's creditors' rights (see Matter of Wilson's Estate, 298 N.Y. 398, 83 N.E.2d 852; 4B Warren's Heaton on Surrogates' Courts [6th ed.], sec. 406, par. 10).

Accordingly, the renunciation will be accepted for filing and the fiduciary should give consideration to complying with the above suggestions.

[Emphasis added.]

The most difficult question here is whether the renunciation was timely. As was pointed out in *Oliver v. Wells,* 173 N.E. at 679, a reasonable time is such time as is equitable in light of all the circumstances. As the court stated:

This time may be very long, if injury to others will not result from the delay, and by the same token very short if the failure to act promptly may work injury or hardship. * * *

Petitioner here argues that both because of the cost of going through a proceeding in the Supreme Court of Westchester County on petition of decedent's committee, as well as the other difficulties involved in such a proceeding, it was reasonable for decedent's sons, one of whom was the committee and both of whom knew that they would be the executors under decedent's will, to wait until after decedent's death to make the renunciation. Petitioner argues that this delay was most reasonable since decedent's life expectancy was so relatively short. Certainly, had the law which became effective November 3, 1971, been in effect with respect to this case, it would have been incumbent upon Edward Dreyer as committee for decedent to apply for approval of the Supreme Court of Westchester County within a year of Annette

Dreyer's death to renounce decedent's interest in Annette Dreyer's estate. However, this law was not in effect with respect to a renunciation of decedent's interest in Annette Dreyer's estate. The cases which have been called to our attention are not precise as to what would be considered a reasonable time. However, they are clear that prior to the enactment of section 3–3.10, N.Y. Est., Powers & Trusts Law, the actual time in years was not the criterion of "a reasonable time." In fact, under the act a party may apply to the court for an extension of time within which to renounce. If such an extension is timely applied for, no precise time for filing a renunciation is specified even under the present law. The New York cases appear to us to hold that if the action of renouncing is delayed until rights of another party may be prejudiced the delay is unreasonable. However, absent such prejudice to another party a long actual period of time is considered to be reasonable. *In Re Wilson's Estate, supra.* See *In Re Estate of Mixter*, 83 Misc.2d 290, 372 N.Y.S.2d 296, 299 (N.Y. County Surr. Ct. 1975), where the court stated in this respect:

> What is the reasonable time varies with the circumstances of each case. The time may be very long if injury to others will not result * * *

Respondent in his brief suggests that to consider the renunciation in the instant case timely would invite a spouse who was left a legacy under the will of his predeceased spouse to wait until the time for determining a deficiency in the estate tax of the predeceased spouse had expired with the marital deduction allowed and then to file the renunciation, thereby having the amount escape tax in either estate.

It may well be, and petitioner in effect admits, that it would be a prejudice to a third party and therefore an unreasonable time to wait to renounce if such a result would occur. However, here the renunciation was made well before the statute of limitations with respect to adjustments of items in Annette Dreyer's estate had run. The indication from the record is that her estate was not sufficiently large in any event to result in an estate tax. Here we see no harm that has resulted to respondent or any other third party by the delay of renunciation of decedent's interest in Annette Dreyer's estate until after decedent's death. On the other hand, petitioner has shown a reasonable basis for the delay. Respondent's com-

plaint appears to be that the renunciation results in less estate tax than would result if no renunciation had been filed. This is true. However, quite often the major reason for a renunciation of an interest in an estate is estate planning or tax savings. See statement to this effect in *In Re Estate of Mixter, supra*. This fact is also recognized in a number of Federal cases. See *Estate of Mackie v. Commissioner*, 64 T.C. 308, 313 (1975), in which we stated:

> Nor are we impressed with respondent's attempt to defeat the marital deduction herein by contending that decedent's will permitted Mrs. Mackie to engage in post mortem estate planning. The same capability exists where a surviving spouse has the right to renounce a bequest or to exercise her statutory right of election. To the extent that such capability existed herein, it operated within recognized limits. Sec. 2056(d); *Brodrick v. Moore*, 226 F.2d 105, 108 (10th Cir. 1955); *Isaac Harter, Jr., supra* [39 T.C. 511 (1962)].

We conclude that on the basis of the specific facts here present the renunciation of decedent's interest in the estate of Annette Dreyer was valid. We decide the only issue before us for petitioner. However, because of agreed adjustments,

*Decision will be entered under Rule 155.*